JAMES FERRELL, *Plaintiff in Error*,

*vs.*

ANTOINE LAMAR, *Defendant in Error.*

ERROR TO MILWAUKEE COUNTY COURT.

The words "unlawful or forcible," used in the second section of the "Act to prevent Forcible Entries and Detainers," must be taken to mean and relate to one class of cases.

It was not the design of this section to give a remedy for a mere trespass where no actual force was used, no riot or breach of the peace committed, and where the only real question is, whether the plaintiff or defendant have the better title.

Where a party, without having a legal right to do so, but without the use of force, has entered into lands, or other realty not then in the actual possession of another, and continues in the peaceable possession so unlawfully obtained, the owner, lawfully entitled to the possession, cannot resort to the remedy provided by this statute.

The chapter of the Revised Statutes, concerning Forcible Entries and Detainers, construed and explained.

This was an action, commenced by Lamar, the defendant in error, under the statute " Of forcible entries and unlawful detainers," for the wrongful detention of a house, before a justice of the peace of Milwaukee county. The defendant below, Ferrell, pleaded the general issue, and the judgment being for the plaintiff below, the cause was removed by appeal to the County Court of Milwaukee county.

Upon the trial in the County Court, it was proved that Joseph Middleton owned the house, and moved it where it now is, in the city of Milwaukee; and sold

it to one Clapp, who executed to Joseph Middleton a

chattel mortgage upon it, to secure the payment of the purchase money; Middleton assigned the mortgage to the plaintiff below, Clapp being in possession at the time; one Richmond succeeded Clapp in the possession, and Ferrell succeeded to the possession of Richmond.

The plaintiff below, and assignee of the mortgage, foreclosed, bid in the property, and then proceeded to dispossess Ferrell, the defendant below, under the statute of "Forcible entries and detainers," for wrongful detention, and gave him notice to quit, &c.

Upon this case the defendant insisted that this action could not be supported, but the court ruled otherwise, and instructed the jury, that if they found Clapp owned the house, and moved it where it is situated, and afterwards gave a chattel mortgage upon it, the purchaser under the foreclosure would be entitled to the possession of the house, and might bring this action to remove the party in possession, holding against such purchase. The defendant below excepted to the ruling and instruction of the court. The jury found for the plaintiff, and judgment was entered accordingly.

The pleadings, and the points arising therefrom, and the principles decided, are fully contained in the opinion of the Court.

*C. K. Watkins*, for the plaintiff in error, made and relied upon the following point:

This action will not lie for personal property, and the plaintiff's title acquired by a chattel mortgage, is nothing else.

There was no argument for the defendant in error.

*By the Court*, CRAWFORD, J.   This is a proceeding under Chapter 117 of the Revised Statutes.   It was commenced before a justice of the peace of the city and county of Milwaukee, by whom a judgment was rendered in favor of the complainant, Lamar, and against the defendant, Ferrell.   The cause was removed by appeal to the County Court.

The complaint contains. two counts, and is as follows:

" Antoine Lamar, of the city of Milwaukee, in said county, complaining, avers, that heretofore, to wit, on the 28th day of January, A. D. 1851, the said Antoine Lamar owned, and had just, good, and lawful right to possess, that certain one-story wooden house, situate, standing and being as follows, to wit: the next and nearest to, and north of the brick powder house on the Bluff, on the west side of Lake Michigan, in said city of Milwaukee, in the county aforesaid.   That previous to the said last mentioned time, to wit, on the 28th day of January aforesaid, one James Ferrell made unlawful entry into the house aforesaid, to wit, at the county of Milwaukee aforesaid, and afterwards, now, to wit, on the day and year first above written, unlawfully holds possession of the said house, against the said Antoine Lamar, and his right aforesaid, to wit, at the county of Milwaukee aforesaid.

" And the said Antoine Lamar, also further complaining to said justice of the peace, further avers, that heretofore, to wit, on the 28th day of January, A. D. 1851, the said Antoine Lamar owned, and had just, good, and lawful right to possess that certain other one-story wooden house, situate, standing and being as follows, to wit: the next and nearest house to, and north of the brick powder house on the Bluff, on

June Term. 1853.

Ferrell vs. Lamar.

the west side of Lake Michigan, in the city of Milwaukee, in the county of Milwaukee aforesaid. That previous to the said last mentioned time, to wit, *on the 28th day of January aforesaid, one James Ferrell procured and had lawful and peaceable entry into said house,* to wit, at the county of Milwaukee aforesaid ; and afterwards, now,ʼ to wit : on the said 28th day of January aforesaid, the said James Ferrell, *so having such lawful and peaceful* entry as aforesaid, did unlawfully hold possession of the said house against the said Antoine Lamar, and by [his] right aforesaid, to wit : at the county of Milwaukee aforesaid."

The defendant applied, by motion before the justice of the peace, to have the cause dismissed for insufficiency of the complaint, which motion was denied ; and thereupon the defendant filed a written plea ; that the complainant *did not own, and had not just, good and lawful right to possess the said premises,* in the said complaint described, and that the said defendant did not make unlawful entry, and did not unlawfully detain the same against the complainant, &c. No change in the pleadings was made in the County Court, but a trial was had on the same issue joined in the justice's court ; upon which trial in the County Court, the jury, by their verdict, as appears by the record, did say that they found the defendant *guilty.* This seems to have been the form and extent of the verdict.

From the pleadings and proofs in this case, it seems, the house in question was originally owned by Henry Middleton, who *let* it to John H. Clapp, and while the latter was in possession, he purchased the house from Middleton. Afterwards, Clapp gave a promissory note to Rudolph Kath, and to secure the payment of

June Term,
1853.

Ferrell
vs.
Lamar.

the note, executed a *chattel mortgage* of the house. which subsequently was assigned by Kath to Antoine Lamar, the complainant. Default having been made in the payment of the note, the mortgage, we are informed, was *foreclosed*, and upon the sale, the complainant became the purchaser. It was also shown, that Clapp gave the possession of the house to one Richmond, from whom the defendant obtained the possession which he held peaceably at the time of the commencement of the proceedings.

For the purpose of disposing of this case, it is necessary to inquire whether the facts presented bring it within chapter one hundred and seventeen of the Revised Statutes.

This chapter furnishes a remedy for two kinds of injury which a person may suffer, to "lands, tenements or other possessions"—one of these is, a forcible or unlawful entry into such lands, tenements, or other possessions, followed by a detention thereof; and the other is, an unlawful detainer, when the previous entry has been lawful and peaceful. The second section of the chapter is as follows: "Any justice of the peace shall have authority to inquire as hereinafter directed, as well against those who make unlawful or forcible entry into lands, tenements, or other possessions, and detain the same, as against those who, having lawful and peaceable entry into lands, tenements or other possessions, unlawfully detain the same; and if it be found upon such inquiry, that *an unlawful or forcible entry hath been made*, and that the said lands, tenements or other possessions are unlawfully held, or are detained *by force or strong hand;* or that the same *after a lawful entry are held unlawfully*, then such justice shall cause the party complaining to have restitution thereof."

In the case of *Gates vs. Winslow*, decided at the present term, we held, that a proceeding for *forcible* entry, is one in which an actual, peaceable possession of the premises must be shown to have been invaded, and that in such case the law will restore the possession to the party complaining, regardless of the question of *title*, because if the party complained of, have the superior title and right to the possession, it is incumbent on him to enforce his right in the mode provided by law, and he shall not be permitted to assert and enforce such right by forcible and illegal means.

The bare fact of possession, carries with it a presumption in law, that the person having it has some title; and this presumption prevails, until by some regular and appropriate proceeding, the contrary is established. But a proceeding under this chapter of the statute is not the appropriate one, in which to try and determine the superiority of title to lands ; and this must be apparent, when we reflect that the court in which the proceeding must be instituted is not a court of record, and is not endowed with either the jurisdiction or incidents necessary to a proper decision of the question of title to realty. It is needless to pursue this branch of the subject any farther.

We are not aware of any case in which it has been found necessary to construe the provisions of this second section relative to " unlawful *or* forcible entry into lands," but the subject is fairly presented in the case now before us.

A careful examination of the language used in this section, satisfies us that the words " *unlawful or forcible*," must be taken to mean and relate to one class of cases. It is true that there is a want of precision in the terms when thus construed ; a *forcible* entry must

necessarily include an *unlawful* one, while an unlawful entry may be made, without that degree of force which the law deems requisite to constitute a *forcible* entry.

Before the enactment of this statute, much difficulty was experienced in the application of the Territorial act " to prevent forcible entries and detainers," and the courts were frequently compelled to deny the prompt and wholesome redress afforded by it, to cases of very great injury, where the degree of force deemed necessary in the law to establish a *forcible* entry, could not be found or proved. In the western portion of the State, where the proceeding for forcible entry and detainer was peculiarly adapted to the situation and wants of the mining population, many cases arose, in which the party illegally deprived of the possession and enjoyment of his mining lot, or other lands or tenements, had been referred to his action of trespass or ejectment, because the court was unable to find that the entry and eviction had been made "with strong hand, or by force and violence." Perhaps, to bring this kind of cases within the summary process in forcible entry proceedings, and to extend such process to cases where a wanton trespass, but not a forcible entry may have been committed, the legislature framed the statute as it now is ; but we cannot think that it was intended to give a remedy under this statute in a case of mere trespass, where no force was used, no riot or breach of the peace committed, and when the only real question involved would be, whether the complainant or the defendant had the better title. As we had occasion to remark in another case, justices of the peace are expressly deprived of the cognizance of cases in which the title to lands is

disputed, and it requires more than implication to warrant us in holding that this statute enables a justice to try and determine questions of title to lands.

But the only material difference between the second section of the present statute, and the second section of the Territorial act to which we have referred, consists in the substitution of the word "*or*" for the word "*and;*" in the Territorial act the language was, "unlawful *and* forcible entry," while in the present statute, it is "unlawful *or* forcible entry."

We believe it would be unreasonable to give such a construction to this word "*or*," as to create a new kind of action, to be tried by a tribunal, which, by its very organization, is deprived of the jurisdiction and powers necessary to a full adjudication; and therefore we deem it the most sound interpretation of this section, to hold, that when a party without having a legal right to do so, but without the use of force, enters into lands or other realty, not then in the actual possession of another, and continues in the peaceable possession so unlawfully obtained, the owner lawfully entitled to the possession, cannot resort to proceedings under the chapter concerning "forcible entries and detainers," but must pursue his remedy in another form of action.

The second section of the Territorial act on this subject, received a judicial construction which we deem equally applicable to our present statute, and we are not disposed to question its correctness. (*See Cox vs. Groshong, Burnett's Rep.* 150.) Until the legislature shall, by express words or irresistible implication, confer upon justices of the peace the power to try the question of title to lands, we must deny to them jurisdiction of cases in which such

question is necessarily involved, as must be the case in unlawful entry.

The other class of cases provided for by this chapter, is, unlawful detainer, where the original entry has been lawful. A holding over after the expiration of the time for which the premises have been let, comes within this class; and the twelfth section of the statutes makes provision for this kind of cases, which are contemplated by the second section, as those where a person "having lawful and peaceful entry into lands, tenements or other possessions, unlawfully detain the same."

We cannot bring this case within either of the above defined classes, and we think the complaint is substantially defective in not properly charging either one or other kind of case. The charge given to the jury by the County Court was erroneous, for the purchaser of the house in question at the foreclosure sale, could not maintain this kind of action against the party who had, before the sale, been in quiet possession, which he continued to hold after the sale was made. If the relation of landlord and tenant existed, and the defendant could be treated as a tenant holding over after notice to quit, the case might be brought within the twelfth section of the statute; but neither the complaint, nor the evidence, presents such a state of the case.

We may remark in conclusion, that the verdict of the jury in the County Court, is not in conformity with the provisions of the statute on that subject.

It should have been in the form given in the statute.

The judgment of the County Court must be reversed, and a new trial awarded.