SCHILLING, Administratrix, etc., Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*February 28 — March 27, 1888.*

*Railroads: Negligence: Injury to persons on track: Unlawful speed of train: Contributory negligence: Nonsuit.*

Plaintiff's intestate was killed upon the track of the defendant's railroad by a freight train approaching from behind him, but which he knew to be due about that time, and which could have been seen for a distance of nearly half a mile. When the train was about forty rods behind him he was walking along a pathway beside the track, and when it was within about forty feet of him he attempted to cross the track without having looked back or listened for the train. *Held,* that although there was evidence tending to show that the train was running at an unlawful rate of speed and that signals were not given by bell or whistle, a nonsuit was properly granted on the ground of the contributory negligence of the deceased. TAYLOR, J., dissents.

APPEAL from the Circuit Court for *Dodge* County.

Action to recover damages for the death of the plaintiff's husband alleged to have been caused by the negligence of the defendant. The facts are sufficiently stated in the opinion.

*Harlow Pease,* for the appellant, contended, *inter alia,*

that it cannot be presumed that the deceased did not look or listen. His negligence in that regard must be *proved*. *Hoye v. C. & N. W. R. Co.* 67 Wis. 1, 15; *Hoyt v. Hudson*, 41 id. 111; *Massoth v. D. & H. Canal Co.* 64 N. Y. 524–529; *Guggenheim v. L. S. & M. S. R. Co.* 9 Western Rep. 903, 33 N. W. Rep. 161. The fact that the train was run at an unlawful rate of speed is competent evidence of the *plaintiff's care*. He had a right to assume that the defendant would obey the law and not bring injury upon him by its violation. *Nutter v. B. & M. R. Co.* 60 N. H. 483–5; *State v. B. & M. R. Co.* 58 id. 408–410; *Clark v. B. & M. R. Co.* 10 Atl. Rep. (N. H.), 676; *Klanowski v. G. T. R. Co.* 57 Mich. 525; Whittaker's Smith on Neg. 419; *Haas v. C. & N. W. R. Co.* 41 Wis. 44–50; *Newson v. N. Y. C. R. Co.* 29 N. Y. 383. The evidence shows that when the deceased first came upon the track from the highway there was no train on the track which could have been seen by him, and that if the train had run at the lawful rate of speed he would not have been overtaken by it, but would have crossed the track in safety and would have left the track to go upon his own premises when the train was still sixty rods away. The unlawful speed of the train was therefore the direct, immediate cause of the injury, and the fact that the deceased walked on the track did not in any way contribute thereto.

Upon another principle the nonsuit was error. "Where a person walking on a railroad track is run over and killed by an engine belonging to the railroad company, the company is responsible in damages for such killing, though the deceased was guilty of a want of ordinary care and prudence in so walking on the track, *provided* it appear that the accident would not have occurred if the agents of the railroad company had used ordinary prudence and care (in running the engine which caused the killing) in giving reasonable and usual signals of its approach and in *keeping a reasonable lookout.*" *Baltimore & O. R. Co. v. State*, 36

Md. 366; *Brown v. H. & St. J. R. Co.* 50 Mo. 461; *Dunkman v. W., St. L. & P. R. Co.* 10 West. Rep. (Mo.), 396–400.

For the respondent there was a brief by *John W. Cary*, attorney, and *Burton Hanson*, of counsel, and oral argument by *Mr. Hanson*. To the point that the deceased was negligent in failing to look and listen before he went upon the track, they cited, besides cases cited in the opinion: *Railroad Co. v. Houston*, 95 U. S. 697; *Grethen v. C., M. & St. P. R. Co.* 22 Fed. Rep. 609; *Holland v. C., M. & St. P. R. Co.* 18 id. 247; *O'Donnell v. M. P. R. Co.* 7 Mo. App. 190; *Mulherrin v. D., L. & W. R. Co.* 81 Pa. St. 366; *Terre Haute & I. R. Co. v. Graham*, 12 Am. & Eng. R. Cas. 80; *Carlin v. C., R. I. & P. R. Co.* 37 Iowa, 316–323; *Murphy v. C., R. I. & P. R. Co.* 45 id. 661; *Chicago, B. & Q. R. Co. v. Olson*, 12 Bradw. 245; *Bresnahan v. M. C. R. Co.* 49 Mich. 410; *Lake Shore & M. S. R. Co. v. Hart*, 87 Ill. 534; *Frazer v. S. & N. A. R. Co.* 81 Ala. 185; *Mobile & O. R. Co. v. Stroud*, 64 Miss. 784.

Orton, J. The undisputed facts of this case seem to be as follows: A very long and heavily loaded freight train of the company, being hauled by a very large and heavy engine, was going from the junction at Watertown northwesterly, a short time before 1 o'clock in the afternoon, somewhat behind the time of half-past 12 o'clock, the regular time of its passing at that place, and where and when it had passed, about on time, for about eleven years before. The wind was blowing strongly from the northwest,— the direction in which the train was moving. From the place where the accident occurred, and southeastwardly towards the junction, the track was open and straight for nearly half a mile, and the train could have been easily seen that distance by any one at the place of the accident, and any one on or near the track at such place could have been

easily seen by the engineer on the train for that distance. When the train was about forty rods behind him, the deceased was walking on a pathway about three feet on the south side of the railroad track, and towards the northwest, and was so seen by the engineer. When the train came within about forty feet of him, the deceased attempted to cross over the track, apparently for the purpose of going towards his house, about 200 feet north or northwest of the track at that point, and where he had lived for a great many years. The attention of the engineer had been diverted by some duty to be performed in a place on the engine from which he could not look ahead on the track, until the train had come within said forty feet of the deceased, just as he attempted to so cross the track in front of the engine. Whether at that time signals were given by whistle or bell or both, is a question in dispute, as also whether the usual signals had been given in crossing the streets of Watertown in the vicinity and before arriving at that point. An attempt was made to stop the train before it reached the deceased, but it was too near him to be successful, and the train was stopped only after the locomotive had passed over and beyond him about eighty feet. The rate of speed the train was going at the time was also a question in dispute. The circuit court, on these facts, granted a nonsuit in the case.

The negligence of the company, if any, consisted in either the signals not having been given or the train having been run with greater speed than six miles an hour; and both of these questions, depending upon a conflict of evidence, were proper to be determined by the jury and not by the court. We presume, therefore, that the only ground upon which the nonsuit was granted was the contributory negligence of the deceased. The deceased knew that this freight train was due at that place about that time, and therefore had reason to expect and look out for

it.   It is quite evident that he did not look to see whether this train was coming towards him, in all that distance of at least forty rods, or he would have kept it within observation up to the time of his attempt to cross over the track; and that he did not look towards the train within that last forty feet, or he would have stopped, or jumped from the track instantly to save his life.   The conclusion is inevitable, therefore, that the deceased did not look, and did not listen.   He used neither his eyes nor his ears in this place of great danger.   The train made a great noise, and, as the engineer testified, as much as the whistle or bell could make.   The strong head-wind may have prevented the sound of either coming to the deceased.   But he was aware of this disadvantage, as well as of the fact that the train was due and might be expected at any moment.   Was he guilty of a want of ordinary care and prudence in thus attempting to cross over the track without hesitating to listen or look in the direction from which he had reason to expect the approaching train?   Can we say that an ordinarily prudent man, with the same knowledge of the time when the train was due, and having lived so near the railroad at that place so long a time, would not have looked or listened before crossing the track?   He took no precaution, and used no means whatever, to avoid the danger.   He used no care and exercised no prudence whatever.   He might as well have been blind and deaf.   Did not his own want of common care and ordinary prudence contribute to the injury that resulted in his death?   It seems to us that this is one of the clearest cases for the application of the rule that it was his duty to have looked or listened before he attempted to cross over the track,— a place of so much risk and danger.   If he had looked back at any time within the distance of that forty rods, and especially before he turned to cross over the track, he would have saved himself from death.

Schilling, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

The cases in this court touching this question are sufficiently numerous and to the point, without at this time concerning ourselves about cases elsewhere. The last case in which this duty to "look or listen" has been considered, and which is cited by the learned counsel of the appellant with the positive assurance that it is authority in point against this nonsuit, is that of *Hoye v. C. & N. W. R. Co.* 67 Wis. 1. In that case the circumstances are very peculiar, and quite different from those of this case in most all respects. It is sufficient to cite the language of Mr. Justice CASSODAY, in the opinion in that case, to show its entire inapplicability to this. He said: "Undoubtedly she was bound *to use her eyes in looking and her ears in hearing*, and to act prudently upon the knowledge thus acquired." "This being the fixed rule of law, it cannot be conclusively presumed that Mrs. Hoye *did not, at the time and place in question, look and listen*, and prudently act upon the knowledge thus acquired." In this case, it *can* be conclusively presumed that the deceased did not look or listen, for, if he had done so, he would most certainly have avoided the danger. There can be no other possible conclusion. It will be noticed that in that case the rule is restated and reaffirmed that a person placed in such circumstances must use his eyes to look and see, or his ears to listen and hear, the approaching train, or be guilty of such a want of care and prudence, and of such contributory negligence, as to preclude a recovery. *Delaney v. M. & St. P. R. Co.* 33 Wis. 70; *Kearney v. C., M. & St. P. R. Co.* 47 Wis. 144; and *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1,— are closely in point. In this last case, the counsel of the respondent has collated numerous decisions in this and other states affirming this rule. See, also, *Rothe v. M. & St. P. R. Co.* 21 Wis. 256; *Langhoff v. M. & P. du C. R. Co.* 23 Wis. 43; *Haas v. C. & N. W. R. Co.* 41 Wis. 44. If we should hold that the deceased was not guilty of contributory negligence in this case, it would vir-

tually overrule all of the above cases.  We think that the circuit court did not err in granting a nonsuit in the case.

TAYLOR, J.  This action was brought to recover damages for killing the husband of the appellant while walking upon the track of the respondent's railroad within the limits of the city of Watertown.  The accident happened shortly after noon on the 27th day of October, 1885.  The following are the material circumstances shown on the trial:

The track of the road as it leaves the junction with the Chicago & Northwestern Railway Company's track at Watertown runs in nearly a westerly direction for about 100 rods and then turns to a northwesterly course.  The place where the accident happened is 153 rods from the point where the track takes a straight line on its north-westerly course.  This 153 rods is an up-grade, going to the northwest, and the track is on an embankment three or four feet above the surrounding surface of the land.  When the train came around the curve and started on the straight course up the grade, the deceased was on the track or along side of it on the westerly side, traveling to the northwest, his back towards the train, about 120 rods ahead of the engine, and there is no evidence showing that he looked behind him from the time the train came around the curve until he was struck and killed by it.  There was a strong wind blowing from the northwest in the face of the deceased and in the face of the engine.  After the deceased was discovered on the track by the engineer just as he came to the straight track, until immediately before he was struck, no notice was taken of his movements by any one on the train or engine until the engine was within forty feet of the deceased, when the engineer claims it was too late to stop the train.  No attempt seems to have been made by the deceased to get off the track before he was struck.  The evidence on the part of the plaintiff tends

strongly to show that no whistle was sounded or bell rung on the engine before striking the deceased. The engineer testifies that the whistle was sounded and the bell rung when he discovered that he was within forty feet of deceased, and that efforts were then made to stop the train. The evidence is not very clear as to how far the train ran after the engineer says he saw the deceased on the track forty feet ahead of the train. He thinks the train was stopped eighty or ninety feet beyond the place where the deceased was struck, or from 120 to 130 feet from the place where he saw him within forty feet of the engine. There was other evidence tending to show that the train ran considerably farther before it was stopped. This fact was material only as tending to show the speed with which the train was running at the time, the plaintiff's evidence tending to show that it was running at the rate of from twelve to fifteen miles an hour, and the engineer claiming that it was running at the rate of about six miles an hour. The train was composed of thirty-two cars and a caboose, drawn by a ten-wheel engine, nineteen to twenty-six inches stroke, called by railroad men a "Mogul."

The evidence tended to show, and it was not controverted by the railroad company, that the track of their road, from what is called the plank-road crossing to the northwest as far at least as the house of the deceased, had been used for many years by the citizens of that part of the city lying northwesterly of the plank-road crossing as a foot way, to the knowledge of, and without objection by, the railroad company. Deceased was about sixty-two years old, a mechanic of ordinary intelligence, and had lived in the vicinity of the railroad track for many years. It was claimed by the plaintiff that the deceased was coming from his work in the city to his dinner, and that he came along the plank-road and then took the railroad track at the plank-road crossing to go to his home. If he came upon

Schilling, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

the track at that point, then he was between ninety and one hundred rods northwesterly of the curve on the track towards the junction, and could not see a train approaching from the junction unless it had passed the curve going on its way to the northwest. If he came on the track at that point, then it is evident that he could not have seen the train when he started to go on the track to his home, because the engineer testifies that when the engine came upon the straight track the deceased was thirty rods northwesterly of the plank-road crossing and within thirty rods of the place where the engine struck him.

If we take the evidence of the engineer as to where the deceased was when the engine came on the straight track, then the train must have run 150 rods while the deceased traveled thirty rods, and as the same evidence shows that the deceased had traveled along the track thirty rods northwesterly of the plank-road crossing when first seen by the engineer, and supposing the comparative speed of the train and deceased was the same, it would show that the train had not left the junction when the deceased first started to walk along the railroad track. The evidence shows that the whole distance from the place where the accident happened to the junction of the C. & N. W. Railway, was 268 rods. We think it may be fairly claimed, that the evidence shows that when the deceased started up the railroad track from the plank-road crossing the train was at the junction and about ready to start. The distance from the junction to the place where the engineer says the train was when he first saw the deceased alongside of the track, is not to exceed 120 rods. The point at which it is claimed the deceased first went upon the track was at least 200 rods northwesterly from the junction. The distance from the same point to the curve in the track beyond which the deceased, standing on the plank-road crossing, could not see

the train, is, according to the evidence, about twice the distance from the plank-road crossing to the point where the deceased was intending to leave the track.

Now, if we suppose the deceased looked up the track when he first started on it, as we are bound to presume that he did until the contrary is shown by the evidence, and saw no train in sight, and he believed, as the evidence shows he had the right to believe, that the train had not yet left the junction, can we say as a matter of law he was negligent in walking along the track or even on the track without looking again while he traveled about fifty-five rods along the same? But it is a legitimate presumption, in the absence of evidence to the contrary, that the deceased looked behind him after he had traveled on or along the track twenty-five rods, and if he did, then, according to the evidence, he could not have seen any train approaching from behind with a straight clear track for 120 rods in full view. The deceased knowing that there was nothing but a freight train coming from that direction,— admitting that he was aware of that fact,— which, according to the laws of the state regulating the rate of speed of trains, was required not to travel to exceed six miles per hour, can we say as a matter of law that he was guilty of negligence because he walked on or along the track thirty rods farther without looking behind again? I think not. And I think that the weight of authority is that, under such or similar circumstances, whether he was guilty of contributory negligence or want of ordinary care in not again looking behind him is a question of fact for the jury and not of law for the court. The evidence of the engineer shows that if the deceased had looked behind him at any time before he got thirty rods northwesterly from the plank-road crossing the train would not have been in sight; and whether it would have been in hearing, no one speaks on that subject,

and with a very strong wind blowing away from the deceased and in the direction of the train, we certainly cannot say as a question of law that he would have heard it.

Viewing the evidence in the most favorable light for the plaintiff, and drawing all reasonable inferences in his favor in determining whether a nonsuit ought to have been granted,— a rule which it is unnecessary to cite authority to sustain — we have this case: The deceased traveling alongside of or upon a railroad track in a city in a place where people have been accustomed to travel for years, looking behind him over a clear track for at least 120 rods, sees no train in sight, turns around and walks on for a distance of thirty rods and is run down by a train approaching from behind without giving any warning, and killed. Can we say as a question of law that his negligence contributed to his death? If the man reasoned about the probabilities of a train overtaking him and running him down, the weight of the argument would be against the probabilities, and unless he was bound to take into consideration the fact that the train would be run twelve or fifteen miles an hour instead of the lawful rate of six miles, it could not possibly run over him while he was walking that distance. Why then, should he be continually looking for that which, in the orderly course of things, ought not to endanger his safety?

But it may be said he must have heard the approach of the train. Whether he heard it or not, under the circumstances, is a question of fact and not of law. Certainly all the presumptions are that he did not hear it. If he had heard it, the natural instinct of self-preservation would have induced him to have at least attempted to avoid it. But with a strong northwest wind blowing towards the approaching train and carrying all sounds with it away from the deceased, and with his back to the approaching train, there is no such certainty that he heard the train, or would have

heard it if he had listened, as to justify a court, as a legal proposition, in holding either that he did hear it, or, if he did not, that he ought to have heard it or would have heard it had he listened.

The fact that the engineer testified that the deceased was walking alongside of the track when he first saw him, and that he stepped between the rails just before he was struck, ought not to change the situation. There is nothing which shows that the deceased was not in as dangerous a position walking alongside of the track as on the track. The only other witness who saw the deceased, says he was walking between the rails all the time she saw him, and her evidence tends strongly to show that she saw him before the engineer claims that he stepped on the track. The evidence also shows that the general custom was to walk on the railroad track and not beside it. Whether he was walking on the track or on the side of the track is clearly, under the evidence, a question of fact. It is also quite clear from the way in which the presiding judge granted the nonsuit that it was because there was no contradiction as to the fact that the deceased was walking on the track when he was killed, and not because the engineer testified that he had been walking beside the track until just before he was killed. The presiding judge having granted the nonsuit on the motion made at the close of the plaintiff's evidence, without any new motion made by the defendant, and without any announcement on the part of the defendant or of the plaintiff that no more evidence would be offered in the case, it should be held, I think, that the nonsuit, if to be sustained at all, should be sustained upon the plaintiff's evidence alone. The plaintiff was not permitted to disprove or rebut the evidence offered by the defendant, and it would be unjust to the plaintiff that the defendant's evidence should be considered on the motion for the nonsuit.

It is admitted that there was sufficient evidence in the

case to charge the railroad company with negligence, and the only question is whether, upon the evidence, it is conclusively shown that the plaintiff's contributory negligence concurred in producing the accident. In my view of the case, the question was for the jury and not for the court. In addition to the numerous cases cited by the learned counsel for the appellant in this and other courts upon the question that the contributory negligence of the plaintiff was, under the evidence in this case, a question of fact for the jury and not of law for the court, see *Weiss v. P. R. Co.* 79 Pa. St. 387; *Penn. R. Co. v. Weiss*, 87 Pa. St. 447; *Schum v. P. R. Co.* 107 Pa. St. 8; *Penn. R. Co. v. Webber*, 76 Pa. St. 157; *Scoville v. H. & St. J. R. Co.* 81 Mo. 434, 439; *Norton v. Ittner*, 56 Mo. 351; *Smith v. U. R. Co.* 61 Mo. 588; *Hill v. Fond du Lac*, 56 Wis. 242, 246; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 632; *Loyd v. H. & St. J. R. Co.* 53 Mo. 509; *Thompson v. N. M. R. Co.* 51 Mo. 190; *Petty v. H. & St. J. R. Co.* 28 Am. & Eng. R. Cas. 618, 625, 626; *Henze v. St. L., K. C. & N. R. Co.* 71 Mo. 636.

This court has adopted the rule of Pennsylvania and many other states that the defense of contributory negligence is a defense to be established by proofs and is not to be presumed from the mere fact that the plaintiff does not show affirmatively that he was in the exercise of ordinary care at the time the accident occurred. It is defensive matter to be alleged and proved by the defendant (*McNamara v. Clintonville*, 62 Wis. 209); and the plaintiff can only be nonsuited on his evidence when such evidence clearly shows that his negligence contributed to the accident.

That the deceased did not look behind him while traveling on or beside the track for thirty or thirty-five rods before he was struck by the train, may be fairly held to have been proved by the evidence in the case, and this fact should go to the jury on the question of his contributory negligence, but it, as said above, is not conclusive. That

he did not listen for the train is not expressly shown by the evidence, and the circumstances are not such as to be conclusive that he would have heard the train if he had listened. His back was towards the train, and a very strong wind blowing from him and in the direction of the approaching train. The evidence is almost conclusive that he did not hear it. Had he heard the train every natural instinct would have prompted him to get out of its way. It seems to me that to sustain a nonsuit in this case upon the evidence, establishes the rule that in every case where a person walks on the track of a railroad or alongside of it in a position where a passing train would strike him, neither he nor his representative can recover. The fact that he is on the road or so near it as to be in danger from a passing train, and his failure to get out of the way, is conclusive evidence of his contributory negligence. This rule has certainly not been adopted by some of the most respectable courts of this country.

In the case of *Balt. & O. R. Co. v. State, use of Trainor*, 33 Md. 542, 554, the court say: "It is argued that if the deceased walked on the track, and his walking on the track was want of ordinary care, and the accident would not have happened if he had not walked on the track, then such walking was the proximate cause of the accident and the plaintiff cannot recover. This argument does not justly apply the rule in 29 Md. 421. By proximate cause is intended an act which directly produced or concurred directly in producing the injury. By remote cause is intended that which may have happened and yet no injury have occurred, notwithstanding that no injury could have occurred if it had not happened. No man would ever have been killed on a railway if he had never gone on or near the track. But if a man does imprudently and incautiously go on a railroad track, and is killed or injured by a train of cars, the company is responsible, unless it has used reasonable care and caution

JANUARY TERM, 1888.    269

Schilling, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

to avert it, and provided that, being on the track, he did nothing positive or negative to contribute to the immediate injury." In this case an employee of the railroad company was killed while walking on the track of the road in open daylight by a passenger train approaching him from behind, the same as in the case at bar. The only difference between the case at bar and that case consists in the fact that in the Maryland case the train was an extra and not a regular as in the case at bar, and that the deceased in the case cited was traveling along the railroad track where persons were not accustomed to walk, and where the deceased had neither an express or implied license from the company to walk. The plaintiff recovered on the trial and the judgment was affirmed by the supreme court. In this case as in the case at bar there was sufficient evidence to carry the case to the jury on the question of the negligence of the railroad company, and the only question was whether, under the admitted facts, the court should say as a matter of law the deceased was guilty of contributory negligence in not discovering the approach of the train and getting out of its way.

*Frazer v. S. & N. A. R. Co.* 81 Ala. 185, was also a case where a person was killed while walking upon the track of the railroad without any license express or implied from the company, and where the evidence apparently made a clearer case of negligence on the part of the deceased than in the case at bar, and the court held that notwithstanding such negligence the plaintiff might recover. The court makes the following statements: "Though it will be re garded as contributory negligence if a person goes on the track of a railroad or puts himself in a place so near in point of time to a collision with a passing train that preventive effort cannot avoid it, his so doing when danger is not immediate does not by itself constitute contributory negligence. It is a condition which remotely contributes

to the subsequent injury, but is not in the legal sense the proximate cause. Such negligence will not disentitle him to recover, unless he could by ordinary care have avoided the consequences of the defendant's negligence."

But, admitting that the deceased was negligent and that his negligence contributed to the accident that caused his death, still, under the evidence in the case, I am constrained to think the court should have submitted the case to the jury upon the ground that the facts as proved tended to show that those in charge of the train were guilty of such gross carelessness as would justify a recovery notwithstanding the negligence of the deceased.

Taking the testimony of the engineer as true as to when he first saw the deceased and how the train was handled from that time until he ran over and killed the deceased, and another fact, which upon the evidence the jury would have been justified in finding, viz., that the train was running at least at the rate of twelve miles an hour, and we have this case: The engineer in charge of the train sees the deceased traveling on or so near the track as to be in a dangerous position, nearly or quite 120 rods ahead of him, with his back towards the train, and a high wind blowing directly from him towards the train, and without taking any measures to watch the man on the track, without giving any signals to warn him of his danger, without lessening his speed or taking any measures to control the speed of the train, and without looking for the man again until he is so near him that it is impossible to avoid running over him, runs over and kills him. Can this be said to be anything but gross negligence? Is human life of so little consequence as compared with the rights and privileges of railroad trains, even though rightfully running upon their own tracks, as to justify the railroad company in running down and killing the man on the track without making the least effort to avoid such a result? It does not help the engineer in this

Schilling, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

case to say that he tried to prevent the accident when it was too late to do so. The facts in this case show just as much neglect on the part of the engineer as if he had never seen the deceased after seeing him 120 rods ahead of him on the track until he had run over and killed him. That he saw him again when it was too late to avoid the accident, and then made efforts, if he did make any, to avoid the disaster, goes for nothing. The carelessness was in not watching the man and getting his train under control, and when he came within such distance of him as showed him that the deceased was, for some reason, in danger of being run over, warning him of his danger and, if necessary, stopping his train. I am not prepared to say that a railroad company may with impunity run down and kill any man who may be found walking along or on its tracks, no matter how careless or negligent such person may be. Having discovered the man on the track in time to prevent running over him, some kind of care on the part of those in control of the train must be shown to avoid the taking of human life. Certainly none was taken by those in charge of the train in this case, so far as disclosed by the evidence.

It cannot be said that this man walking on the track or alongside of it is in the same situation with regard to the care that those in charge of the train are bound to exercise as a man who is seen by those in charge of the train approaching a road crossing. In such case it may be said that those in charge of the train are not bound to slacken their speed or have the train in control so as to be able to stop the same suddenly, and may rest upon the presumption that the person approaching the track will stop before crossing it if the train is in sight and so near as to endanger him while crossing. In support of this proposition I am content to cite a brief abstract from the opinion in *Frazer v. S. & N. A. R. Co.* 81 Ala. 185, and the citation of the cases below. In the case of *Frazer v. S. & N. A. R. Co.*,

Schilling, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

the court say: " In order not to be misunderstood it may be observed that where the persons in charge of the train discover the peril, or are in a position where they ought to have discovered it, a position in which the circumstances, movements or condition of the person injured would manifest to a vigilant observer *that such person is unaware of his peril,* or if aware of it unable to extricate himself, a culpable omission to use the means in hand to prevent an accident, when a prompt resort thereto might have prevented it without endangering the freight or passengers being transported on the train, will be regarded as reckless or intentional negligence." The rule above stated is fully sustained by the following cases: *Balt. C. P. R. Co. v. McDonnell,* 43 Md. 534; *Northern C. R. Co. v. Price,* 29 Md. 420, 425; *St. Louis, A. & T. H. R. Co. v. Manly,* 58 Ill. 300; *Lake Shore & M. S. R. Co. v. Miller,* 25 Mich. 277; *Isabel v. H. & St. J. R. Co.* 60 Mo. 475; *Harlan v. St. L., K. C. & N. R. Co.* 65 Mo. 26; *Zimmerman v. H. & St. J. R. Co.* 71 Mo. 484; *Frick v. St. L., K. C. & N. R. Co.* 75 Mo. 542; *Kelley v. H. & St. J. R. Co.* 75 Mo. 140; *Werner v. C. R. Co.* 81 Mo. 368; *Welsh v. J. C. H. R. Co.* 81 Mo. 466; *Scoville v. H. & St. J. R. Co.* 81 Mo. 434; *Baumeister v. G. R. & I. R. Co.* 28 Am. & Eng. R. Cas. 476; *State v. M. & L. R. Co.* 52 N. H. 528, 557; *Isbell v. N. Y. & N. H. R. Co.* 27 Conn. 393.

I think the case should have been submitted to the jury both upon the question of the contributory negligence of the deceased and upon the question of the gross negligence of those in charge of the train.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 37 N. W. Rep. 416.— REP.