HANSEN, Administrator, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*November 19 — December 6, 1892.*

*Railroads: Killing of person on track: Contributory negligence.*

Plaintiff's intestate started to cross defendant's track a short distance in front of an engine, and was killed. If he had looked before attempting to cross he could have seen the engine approaching. *Held,* that he was guilty of such contributory negligence as to prevent a recovery.

APPEAL from the Circuit Court for *Milwaukee* County. Action to recover damages for the killing of plaintiff's intestate. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *John T. Fish,* attorney, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *Shepard, Haring & Frost,* attorneys, and *Edward W. Frost,* of counsel, and oral argument by *C. I. Haring.*

| 83 | 631 |
|----|-----|
| 87 | 312 |
| 83 | 631 |
| 90 | 194 |
| 83 | 631 |
| 91 | 26 |
| 83 | 631 |
| 92 | 109 |
| 83 | 631 |
| 99 | 385 |
| 83 | 631 |
| 102 | 493 |
| 83 | 631 |
| 115 | 206 |

ORTON, J.   The intestate, Otto Froehlich, was killed on the 24th day of October, 1887, by one of the engines of the appellant company, while near the center of the track of the railway as it runs east and west along Canal street, in the city of Milwaukee, at about 5 o'clock in the afternoon. The engineer had, a short time before, left his engine for a few minutes in charge of the fireman, and ordered the fireman to go ahead with the work.   The fireman, who had been on the south side of the engine,— his proper place,— went directly to the other side,— the proper place of the engineer.   The engine had attached to it a very large box car only.   The fireman first ran the engine eastward on the side track a short distance, and kicked some cars eastward down the track, and then ran ahead with the single box car towards the west, intending to go upon the main track. One John Cahill was the switchman at the switch at the junction of the main track with the side track, towards which the engine was moving westward.   He stood looking towards the east and the approaching engine.   He testified, in effect, that he saw the intestate walking along a not much used pathway on the south side of the track, going towards the west.   He was only a few feet from him, and saw him look at the approaching engine just as he was about to warn him of his danger, and for that reason he did not cry out to him.   The engine was in plain sight, and very near to the intestate, when he saw him look at it. The intestate then turned to cross over the track (and then the switchman gave the alarm too late), and when about the middle of the track he fell down, and almost immediately the engine ran over him and so injured him that he died in a few hours.   When the deceased was struck by the engine, the fireman on the engine, the switchman, and the deceased were within a few feet of each other.   There was no obstruction along the track to prevent the deceased seeing plainly the approaching engine before he started to

cross the track. There was a better and more used pathway on the north side of the track, and the path on the south side, a little way ahead of him, was obstructed; and it may be that was the reason he wished to cross over the track, for he was going west in the direction of his place of employment.

It hardly seems possible that the deceased should have looked at and seen the approaching engine so near him, and then started to cross over the track; and yet this is the positive testimony of Cahill, standing within a few feet of him, and facing him, repeated and reiterated. He was the only witness to the accident. The fireman, who was running the engine at the time, saw nothing of the deceased until after the accident; and could not have seen him from the right side of the cab, where he was standing, if he had looked. If he had been on the left or south side of the cab,— his proper place as fireman,— he could, and probably would, have seen the deceased as he started to cross over the track, and in time to have stopped the engine.

The jury returned a verdict for the plaintiff of $5,000 damages. The court overruled a motion for a new trial on the ground that the verdict was contrary to the law and the evidence, besides many other reasons, and the defendant excepted to the denial of the motion. This exception brings before us the consideration of the case on its merits, and we are satisfied that the judgment ought to be reversed on the facts. We shall therefore consider no other question than that the verdict is against the evidence.

1. The evidence tends strongly to show the culpable negligence of the defendant company.

2. The testimony shows that the decedent, before attempting to cross the track of the railroad, looked at and saw the approaching train near by and imminent. If this is true, then the deceased was not only negligent, but reck-

less, in attempting to cross the track. If he did not look and see the train at that time, as testified to by the witness Cahill, then there is no evidence whatever that he looked for the purpose of seeing whether there might not be a train approaching before attempting to cross the track, or that he used any precaution whatever for his own safety; and therefore his own want of ordinary care contributed to his injury and death, and the plaintiff cannot recover. Either fact — that he looked and saw, or that he did not look — is fatal to the verdict. We shall therefore consider the case on the assumption that he did not look. The engine was very close upon him and in plain sight when he started to cross the track before it; and it was light as the day, as the witnesses testified, although after 5 o'clock in the afternoon, and he could have seen it. There is some evidence that the deceased was intoxicated, but it is not conclusive. He fell down on the track, and perhaps tried to get up and out of the way, and may have done the best he could *then* and *there*. But that is not the question on which his negligence depends. The *material* question in the case is what he did, or what precaution he used, to save or shield himself from danger at that *crisis*, before placing himself in such a condition of peril, by going on the track in the face and front of the approaching engine.

This is not a new case in this court. There have been a great many judgments in railroad cases reversed by this court on precisely the same ground of not looking to see if a train is approaching before going on the track. Within the past month, the case of *Schmolze v. C., M. & St. P. R. Co. post*, p. 659, was decided on the same question, and it was the only question decided in the case. The judgment was reversed because the plaintiff did not look before going on the track, when, if he had looked, he could have seen the train approaching. This is a stronger case than

that, because the deceased here did not look at all; and in that case he looked, but at a time and place when he could not see the train, and failed to look when he could. The present chief justice said in the opinion: "A person cross- ing the main track of a railroad must take notice that trains are liable to be passing at any time, and must listen and look for them, if he would fulfill the requirements of ordi- nary care." In that case, as in this, the person injured did not look to see whether there was a train approaching be- fore he attempted to cross the track; at least there was no evidence that he did; and it was held fatal to the verdict. That was the only question decided in that case, and it is the only question that need be decided in this case. The following cases are cited as containing the same principle: *Rothe v. M. & St. P. R. Co.* 21 Wis. 256; *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1; *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255; *Schoenfeld v. M. C. R. Co.* 74 Wis. 433. There are many other cases in this court affirming the same principle. When this principle has been established in so many cases in this court, it is not only needless, but casts a doubt on our own cases, to cite cases elsewhere. It is too late to argue such a question in this court, where the fact is ad- mitted. A person must not heedlessly, and without either looking or stopping to listen, go on the track, or attempt to cross it, in front of an approaching train, near at hand and in sight, and if run over by it expect the law will give him a verdict against the railroad company as a premium on his negligence. It is a very little thing to do to look and listen before he places himself in such a perilous and fatal place of danger. Every ordinarily prudent man will do so; nay, every one who is not reckless and extremely careless and thoughtless will do so. But this principle of law needs no apology or vindication. The circuit court

should have set aside the verdict on the facts, and granted the defendant's motion for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.