SCHLIMGEN, Administrator, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*April 3 — April 23, 1895.*

*Railroads: Injury to person at street crossing: Detached cars: Failure to keep lookout: Contributory negligence: Failure of person to look.*

1. Plaintiff was injured on defendant's track, at a street crossing, by moving cars from which the engine had been detached. He was standing near the track, talking to a section man, when the engine passed going east, and he then looked west along the track but did not see the cars following it. After some further conversation he started to cross the track from a point about fifteen feet distant, without again looking to the west. Had he looked he would have seen the cars coming. There was nothing to obstruct his view of them or to divert his attention as he approached the track. *Held,* that he was guilty of contributory negligence. *Ferguson v. Wis. Cent. R. Co.* 63 Wis. 145, distinguished.

2. The evidence was sufficient, had there been no contributory negligence, to justify the submission of the case to the jury as to the defendant's negligence in failing to keep a lookout in the direction in which the cars were moving, as they approached the street crossing where people were liable to be.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Schlimgen vs. Chicago, Milwaukee & St. Paul R. Co.

The complaint alleges, in effect, that February 10, 1893, James Kapinos, while passing on foot over the defendant's right of way at Scott street crossing in the village of Mazomanie, was, by the negligence of the defendant, struck by detached freight cars and badly injured, without any fault or negligence on his part. The answer consists of admissions and denials.

At the close of the trial the jury returned a special verdict to the effect: (1) That the defendant's servants and employees who had charge of the train at the time in question were not in the exercise of ordinary care in the management and running of the engine and cars at the time in question; (2) that such lack of exercising ordinary care on their part was the direct cause of the injury to the plaintiff; (3) that the east end of the approaching cars, when the plaintiff started from the place where he stood, south of the main track, to go across the track, was sixty feet west of him; (4) that the plaintiff, when he started from the place where he stood, south of the main track, to go across it, did not look west along the track to see if there were cars coming; (5) that the plaintiff, when he started to cross the main track, was fifteen feet south of it; (6) that the cars in passing from the coal shed to the west end of the station platform moved at the rate of six miles per hour; (7) that the plaintiff was not guilty of any want of ordinary care which directly contributed to produce the injury; (8) that the plaintiff's damages were assessed at $5,000. From the judgment in favor of the said James Kapinos entered on that verdict the defendant appealed. Since taking said appeal, and on December 23, 1894, the said James Kapinos died in Milwaukee, and thereupon, on April 3, 1895, *John Schlimgen* was appointed administrator of his estate, and has been substituted as plaintiff in this action.

For the appellant there was a brief by *Burton Hanson* and *Geo. W. Bird,* and oral argument by *Mr. Bird.* As to

Schlimgen vs. Chicago, Milwaukee & St. Paul R. Co.

the negligence of the plaintiff they cited *McKinney v. C. & N. W. R. Co.* 87 Wis. 282; *Schilling v. C., M. & St. P. R. Co.* 71 id. 255; *Schmolze v. C., M. & St. P. R. Co.* 83 id. 659; *Elliott v. C., M. & St. P. R. Co.* 150 U. S. 245; *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304; *Dullea v. C. & N. W. R. Co.* 86 id. 173; *Brunette v. C. & N. W. R. Co.* id. 197; *Hansen v. C., M. & St. P. R. Co.* 83 id. 631; *Magner v. Truesdale,* 53 Minn. 436; *Regan v. C., M. & St. P. R. Co.* 85 Wis. 43; *Jenson v. C., St. P., M. & O. R. Co.* 86 id. 589; *Woodard v. N. Y., L. E. & W. R. Co.* 106 N. Y. 369; *Byrne v. K. C., F. S. & M. R. Co.* 24 L. R. A. 693; *Tucker v. N. Y. C. & H. R. R. Co.* 124 N. Y. 308; *Burke v. N. Y. C. & H. R. R. Co.* 73 Hun, 32; *McGee v. Consolidated St. R. Co.* 60 N. W. Rep. 203; *Gardner v. D., L. & N. R. Co.* 97 Mich. 240; *Haight v. N. Y. C. R. Co.* 7 Lans. 11; *Buelow v. C., St. P. & K. C. R. Co.* 60 N. W. Rep. 617; *Nelson v. D., S. S. & A. R. Co.* 88 Wis. 392; *Blount v. G. T. R. Co.* 9 C. C. A. 526; *Myers v. B. & O. R. Co.* 150 Pa. St. 386; *Penn. R. Co. v. Bell,* 122 id. 58; *Marland v. P. & L. E. R. Co.* 123 id. 487; *McCabe v. C., St. P., M. & O. R. Co.* 88 Wis. 530.

For the respondent there was a brief by *Bashford, O'Connor, Polleys & Aylward,* and oral argument by *J. L. O'Connor* and *J. A. Aylward.* To the point that the plaintiff was not guilty of contributory negligence as a matter of law, and that the question of his negligence, under all the facts and circumstances in the case, was properly submitted to the jury, they cited *Winey v. C., M. & St. P. R. Co.* 61 N. W. Rep. 218; *Valin v. M. & N. R. Co.* 82 Wis. 1; *Langhoff v. M. & P. du C. R. Co.* 19 id. 489; *Loucks v. C., M. & St. P. R. Co.* 31 Minn. 526; *Roberts v. C. & N. W. R. Co.* 35 Wis. 679; *Philadelphia, W. & B. R. Co. v. Stinger,* 78 Pa. St. 219; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Butler v. M. & St. P. R. Co.* 28 id. 487; *Bower v. C., M. & St. P. R. Co.* 61 id. 457; *Ferguson v. Wis. Cent. R. Co.* 63 id. 145;

Schlimgen vs. Chicago, Milwaukee & St. Paul R. Co.

*Duame v. C. & N. W. R. Co.* 72 id. 523, 530; *Ward v. C., St. P., M. & O. R. Co.* 85 id. 601; *Whalen v. C. & N. W. R. Co.* 75 id. 654; *Johnson v. L. S. T. & T. Co.* 86 id. 64; *Ditberner v. C., M. & St. P. R. Co.* 47 id. 138; *Phillips v. M. & N. R. Co.* 77 id. 349; *French v. T. B. R. Co.* 116 Mass. 537; *Tyler v. N. Y. & N. E. R. Co.* 137 id. 238; *Spencer v. I. C. R. Co.* 29 Iowa, 55; *Artz v. C., R. I. & P. R. Co.* 34 id. 153; *Farley v. C., R. I. & P. R. Co.* 56 id. 337; *Bonnell v. D., L. & W. R. Co.* 39 N. J. Law, 193; *Delaware, L. & W. R. Co. v. Converse,* 139 U. S. 469; *Patton v. E. T., V. & G. R. Co.* 12 L. R. A. 184; *Chicago & E. I. R. Co. v. Hedges,* 105 Ind. 398; *O'Connor v. M. P. R. Co.* 94 Mo. 150; *Alabama & V. R. Co. v. Summers,* 68 Miss. 566; *Brown v. N. Y. C. R. Co.* 32 N. Y. 597; *Breckenfelder v. L. S. & M. S. R. Co.* 79 Mich. 560; *Philadelphia & R. R. Co. v. Carr,* 99 Pa. St. 505.

CASSODAY, J.   The depot in Mazomanie fronts to the north. At the east end of the depot platform is Brodhead street, running north and south, and about eighty feet wide.   About 275 feet east of Brodhead street is the turn-table, and about 540 feet east of Brodhead street is the water-tank.   Immediately north of the depot, and about eight feet from it, is the main railway track, and there are two tracks north of that, and immediately south of the depot is another track, and about sixty-five feet south of that is still another track. Southwest from the depot, and about 100 feet from it, are the stock yards, and the ice-house is immediately west of that, and they are both between the two last-named tracks. The stock yards and the ice-house together are about 160 feet in length.   Nearly 200 feet west of the depot, and 320 feet west of Brodhead street and parallel with it, is what was originally laid out as Scott street, eighty feet in width, but which is now entirely crossed by the stock yards and the ice-house mentioned.   The depot platform runs west to Scott street.   Scott street, north of the railway grounds, is

still used as a street, but is considerably narrowed up by buildings and other incumbrances.  That part of Scott street within the railway grounds north of the ice-house and stock yards is still used for teams by those going to the depot or stock yards from that direction, and is also in daily use by persons on foot.  About 320 feet west of Scott street, and parallel with it, is Crocker street, and 320 feet west of that, and parallel with it, is a public highway on the section line. About 165 feet west of Scott street is the east end of the coal shed, which runs west 112 feet, the north side of which is eight and one-half feet south of the main railway track, and the same is about nineteen feet wide, its height being uneven, its greatest height being about twenty-eight feet; and the west end is about forty feet east of Crocker street. From the public highway on the section line at the west to the water-tank at the east, a distance of over 1,700 feet, the main track forms the arc of a very large circle, with the depot on the concave side and a little east of the middle. So that the main railway track on the east side of Crocker street is about seventy-five feet further north than on the east side of the public highway mentioned, and the main railway track at the center of Scott street is about ten feet further north than at the east line of Crocker street.  Such was the general situation at the time of the injury in question.

.  The undisputed evidence is to the effect that at the time of the trial Kapinos was fifty-two years of age; that he had lived in this country thirty-eight years; that fifteen years of the time he had resided in Mazomanie; that he had worked for the defendant on a gravel train and section work from the spring of 1867 to the fall of 1892; that he was familiar with the manner of handling brakes and train signals; that on the morning of February 10, 1893, he went from where he was living, in the southeast part of the village, to see one Krachey, residing on Scott street north of the railway; that, failing to find him, he again returned to

Krachey's house, but he was still absent from home; that he then went south on Scott street to the main railway track, where he found two section men shoveling snow from the track — one, Micula, near the west line of Scott street and a few feet south of the main railway track, and the other, Loudine, near the cinder pit and a few feet south of the main railway track; that the cinder pit was about ten feet long and under the main railway track; that the east end of the cinder pit was thirteen feet west of the west end of the depot platform; that from the west end of the cinder pit to the east end of the coal shed was $209\frac{1}{2}$ feet; that Kapinos stopped and talked with Loudine; that while thus talking, and standing eight or ten feet south of the main railway track and about two feet west of the cinder pit, he looked west and saw the engine, with the bell ringing, about the center of the coal shed, coming from the west with the tender and snow plow attached; that it passed by and went east, with the head brakeman on the tender; that as it passed him he stepped back south a couple of steps; that he then looked west, as he testified, and could see the main railway track about to the center of the coal shed, but did not notice anything coming at that time; that his father had been killed on a train before, and that he was afraid there was a train coming; that then, after some further conversation with Loudine, he started north across the track, about two feet west from the cinder pit, with his face turned easterly, when he was struck on his left side by the balance of the train coming from the west, and knocked down on the track and badly injured; that it was about half past ten o'clock in the forenoon; that the tender and engine were part of a wild or irregular stock train, not running on any schedule time; that the balance of the train, consisting of nine cars and a caboose, had been uncoupled from the tender and engine while the train was in motion, somewhere west of the coal shed; that when the tender and engine were so uncoupled

the conductor set the brake on the first car, then on the second, and then on the third, when he heard Micula halloo to Kapinos about the time he was struck; that the hind brakeman had previously set the brake on the car next to the caboose, and also on the second and third car from the caboose; that the distance from where Kapinos stood at the time he looked west, after the engine passed, to the middle of the coal shed, where he could have seen the cars coming had they been there, as he testified, was 263 feet, or nearly sixteen rods.

One of the plaintiff's witnesses, who was at the time standing on the north side of the depot and about the middle of the depot platform, testified to the effect that when Kapinos was struck the engine had just passed over Brodhead street,— which would indicate that the cars at the time were about 440 feet back of the engine. Other witnesses put them considerably further apart, but the discrepancy is not material. There is some slight discrepancy as to the precise distance Kapinos stood south of the main railway track when talking to Loudine, just before he started to go north; that is to say, whether he stood eight or ten feet south of the track, or a step or two further south. But this is not material, in view of the fact that Kapinos testified to the effect that he could see the track west to a point about the middle of the coal shed.

The question arises whether, upon the undisputed evidence, the court was justified in submitting the case to the jury.

1. We are constrained to hold that, in the absence of contributory negligence, there would have been sufficient evidence to justify such submission as to the defendant's negligence in failing to keep a lookout in the direction in which the car which struck Kapinos was moving, as it approached the crossing where people were liable to be. *Heddles v. C. & N. W. R. Co.* 74 Wis. 247; *Johnson v. L. S. T. & T. Co.* 86 Wis. 64.

2. The more important question is whether it appears from the undisputed evidence that Kapinos was guilty of contributory negligence. The jury found that when Kapinos thus started to go north across the main railway track he did not look west along the track to see if there were any cars coming. It is very manifest that had he looked when he so started, or at any time thereafter and before he was struck, he would have seen the coming cars, as there was nothing else to obstruct his vision for at least 263 feet, and that distance would necessarily increase as he approached the track. The jury found that he was fifteen feet south of the main track when he so started to go north; that the coming cars were sixty feet west of him when he so started; and that they were moving at the rate of six miles per hour. Thus it appears from the verdict that the cars were moving about twice as fast as a man would ordinarily walk. In other words, had he looked, the cars would have been in plain sight of him for a sufficient length of time for him to have walked 131 feet,— when at most he did not walk more than fifteen feet before he was struck. It may be that the jury would have been warranted by the evidence in finding that the cars were moving more rapidly than they did. Still the question would recur whether Kapinos was excusable for not looking west before going onto the track. True, in giving an affirmative answer to a question put to him on cross-examination, Kapinos was made to say that he looked west " *when* " he started to go across the track, and repeated the same a little later. But he must have meant what he testified to on direct examination, to the effect that he looked just " *before*" starting. If he had looked when he started, or at any time thereafter and before he was struck, he would necessarily have seen the cars coming in time to have stopped, for it appears affirmatively that there was nothing to obstruct his vision, and, in the absence of evidence to the contrary, we cannot assume that his eyesight was defective.

If, as contended on behalf of the plaintiff, he had conversation with Loudine after having looked west and failed to see any moving cars, still we are constrained to hold that that fact of itself was insufficient to excuse him from looking again before going upon the track. He had no team nor animal to manage. He was in no way incumbered. His body and limbs were subject to his own volition. He could stop immediately. According to the verdict of the jury, he did not move faster than one half of an ordinary walk. There does not appear to have been anything to divert his attention as he approached the track. A railroad track is, in effect, a standing proclamation to those approaching it that cars are liable to run thereon at any time; and especially is this so on depot grounds. This court has repeatedly held that a person approaching a railway track must use his eyes in looking and his ears in listening. The looking and the listening must, as a general rule, be contemporaneous with the act of approaching and crossing. The shorter the distance that can be seen along a track by one approaching the same, the more frequently should the person so approaching look and listen. The obligation resting upon Kapinos to exercise ordinary care to escape danger in approaching and crossing the track was just as binding as the obligation resting upon the defendant's servants having the management of the coming cars to use ordinary care to prevent danger to any one, and his opportunities for avoiding such danger were far superior to their opportunities to prevent such danger. They had ten cars to manage. He had nothing to manage but himself.

These views are in harmony with numerous adjudications of this court. *Langhoff v. M. & P. du C. R. Co.* 23 Wis. 43; *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Haas v. C. & N. W. R. Co.* 41 Wis. 44; *Kearney v. C., M. & St. P. R. Co.* 47 Wis. 144; *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255; *Olson v. C., M. & St. P. R. Co.* 81 Wis. 41; *Hansen v.*

*C., M. & St. P. R. Co.* 83 Wis. 631; *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659; *Wilber v. Wis. Cent. Co.* 86 Wis. 535; *Lofdahl v. M., St. P. & S. S. M. R. Co.* 88 Wis. 421.

The facts in the case at bar are much less favorable to a recovery than several of the cases here cited. The cases relied upon by counsel for the plaintiff are clearly distinguishable. The nearest approach of any of them to the case at bar is, perhaps, *Ferguson v. Wis. Cent. R. Co.* 63 Wis. 145, where, in a village, the plaintiff stepped upon the track immediately after the engine had passed, and when he was so enveloped in smoke and steam from the engine as to prevent him from seeing the approaching cars, which had been uncoupled and were following the engine, and it was held that the question of contributory negligence was properly left to the jury. No such facts are here present.

Upon the undisputed evidence, as well as the verdict, we must hold that Mr. Kapinos was guilty of contributory negligence. There are manifest errors in the record, but we have felt that it is better for all parties that the case should be decided upon the merits.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.