NOLAN, Appellant, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Respondent.

*September 6 — September 26, 1895.*

(1, 2) *Construction of statutes: Acts* in pari materia: *Speed of train in " villages."* (3-5) *Railroads: Injury to person at street crossing: Contributory negligence: Failure to look: Diversion of attention.*

1. Where a word has a definite meaning in one act it will be given the same meaning in a subsequent act *in pari materia,* unless some other meaning is definitely expressed.

2. Ch. 467, Laws of 1891 (providing that any railroad company whose line "extends through cities and *villages,* shall not run its trains

or locomotives faster than fifteen miles an hour until after having passed all the traveled streets thereof . . . provided, however, that gates shall first be placed and maintained upon such street crossings within cities and incorporated villages" as the authorities may direct), is *held*, in view of its title ("An act to limit the rate of speed of railroad trains and locomotives in *incorporated villages* and cities"), and in view of its evident purpose to allow a greater speed than that allowed by sec. 1809, R. S. (which section limits the speed in cities and incorporated villages only), not to be applicable to unincorporated villages.

3. One who approaches a railway track is bound to use both his eyes and his ears in order to avoid danger not only from moving trains or locomotives but also from trains or locomotives which may be quickly put in motion to his peril.

4. One who was injured at a street crossing by a locomotive in front of which he stepped after having stopped near the track with his back to the direction whence it came, and which he would certainly have seen had he looked in that direction before stepping on the track, is *held* to have been guilty of contributory negligence. Such negligence was not palliated by the fact that, just before stopping, he had seen the locomotive standing still about 200 feet away; nor was he absolved from the duty to look before stepping on the track by the negligence of those in charge of the locomotive in the manner of running it to the crossing.

5. The fact that the person so injured had stopped to give directions to an assistant in the matter of loading a stock car on a sidetrack near by, and that he was looking for the stock train which he expected from the opposite direction, did not constitute such a diversion of his attention as would excuse his negligence.

APPEAL from a judgment of the circuit court for Manitowoc county: N. S. GILSON, Circuit Judge. *Affirmed.*

The plaintiff sued to recover damages for the loss of the greater part of one of his feet, caused by the wheels of defendant's locomotive passing over the same, about 200 feet west of the platform of its station at Reedsville, an unincorporated village having a population of about 500 and several traveled streets. The main track of defendant's road passes through block 51 of the village in a nearly east and west direction, the station building being somewhat east of

Nolan vs. The Milwaukee, Lake Shore & Western R. Co..

the center of this block. A sidetrack passes through the block on the north and one on the south of the station house; and Fifth street, a much traveled highway, passes in a north and south direction across the said tracks and along the west side of the block. It appeared that the defendant was accustomed to give signals by bell or whistle when its trains started from the station to go over this and other streets, with which custom the plaintiff was familiar. On the occasion in question he had been engaged with one Cooney in loading a cattle car on or near Fifth street, near the place where the south sidetrack crosses it. This side-track, at this point, was nineteen feet south of the main track. When the car was loaded, the passenger train came in from the east and went west, and the plaintiff then passed around the end of the cattle car, and saw the freight train on the main track at the depot, loading or unloading freight, and the locomotive was about 200 feet from Fifth street, and headed west, so as to cross said street when the train started. The plaintiff had started from the stock car, north along Fifth street, and stopped to engage in a conversation with Cooney in respect to the necessity of tying a bull they had put in the stock car, before the train from the west arrived to take the car away. Cooney said the train was coming, and the plaintiff was looking to see it, in a direction oppo-site to where the freight train stood at the depot, and with his back towards the latter train. He had passed north on Fifth street until he was quite near the main track. The engine, in the meantime, had been detached from the train, and started up, running at a rate of speed variously esti-mated at from eighteen to twenty-five miles per hour, the fireman being in control of it, but without ringing the bell or giving any signal; and, as the plaintiff stepped upon the track, he received the injury complained of, by being struck by the wheel of the locomotive.

The plaintiff's account of the situation and what occurred

was, in substance, that he was between the south sidetrack and the main track, about two steps from the latter, facing southwest toward the car where Cooney was; that he turned around and looked at the train at the depot, where they were loading or unloading freight; that about this time Cooney's son James came, and the plaintiff had taken a step and was within one step of the track; that he turned, looked at James, told him to get a rope to tie the bull, and told him if the stock train came he (the plaintiff) could tie the bull before they pulled out. "As he turned from me, I turned. He said the train would be from the west. I looked west, and turned onto the track — swung around. Was close to the track; standing southwest. Just as I swung my feet I was into the track with my left foot; and as I stepped in the cowcatcher was on me." He testified that he did not hear any noise just before he was struck; that he listened, and was listening all the time; that the bell was not rung or whistle blown; that it was a fine day, and there was nothing to prevent his hearing signals; and that he did not know whether the train was going out on the main track or not; that he had talked only two or three words after he saw the train standing at the station before the locomotive struck him, and he did not see it again from the time he looked back at it over his shoulder until it came in contact with him; that when he looked back at it his back was towards the locomotive, and he then had the conversation with Cooney about tying the bull, and was standing a foot or two from the main track; that he did not see the necessity of looking when he had looked just before that; that he did not look to see where the engine was when he stepped into the track, as he had looked just before; that there was only a few seconds of talk with James Cooney, and that he did not look while talking with him; that this was only a few seconds, and when he stepped on the track the cowcatcher was right on his legs; that he did not know

Nolan vs. The Milwaukee, Lake Shore & Western R. Co.

when the engine started from the station; that there was a plain open track all the way between him and the loco-motive, without any obstruction to prevent him from seeing the train. "*Q.* When you got through talking with James Cooney, you stepped inside the iron rail without stopping to look up at the train again? *A.* He said that the train would be here from the west. *Court:* The question is a plain one. *A.* I stepped right in; yes, sir. . . . I looked west as I stepped into the track. When he said there was a train coming in from the west, I looked that way. I had looked east just before I spoke to him, and he said it would be here from the west, and I looked west when I stepped in. I did not see anything coming from the west, and I could have heard it from the east if she had given the signal."

The defendant moved for a nonsuit at the close of the plaintiff's case, which was granted, as appears from the opinion of the court in the record, on the ground of con-tributory negligence on the part of the plaintiff.

For the appellant there was a brief by *Schmitz & Kirwan,* attorneys, and a separate brief by *Edward S. Bragg,* of coun-sel, and oral argument by *Michael Kirwan* and *Mr. Bragg.* They contended, *inter alia,* that upon the facts and under the decisions of this court the trial court was not justified in holding, as matter of law, that plaintiff was negligent. *Johnson v. L. S. T. & T. Co.* 86 Wis. 64; *Little v. Superior R. T. R. Co.* 88 id. 402; *Greany v. L. I. R. Co.* 101 N. Y. 419; *Siegel v. M. & N. R. Co.* 79 Wis. 404, 407; *Valin v. M. & N. R. Co.* 82 id. 1; *Piper v. C., M. & St. P. R. Co.* 77 id. 247; *Chaffee v. B. & L. R. Co.* 104 Mass. 108, 116; *Phillips v. M. & N. R. Co.* 77 Wis. 349, 355; *Glushing v. Sharp,* 96 N. Y. 677. Unlawful speed, omission of signals, and engineer's absence, leaving but one man to watch and to handle the engine, were the proximate causes of the in-jury. At least the jury would have been at liberty to so find. *Piper v. C., M. & St. P. R. Co.* 77 Wis. 267; *Win-*

*Stanley v. C., M. & St. P. R. Co.* 72 id. 375; *Rohde v. C. & N. W. R. Co.* 86 id. 309; *Hooker v. C., M. & St. P. R. Co.* 76 id. 542, 546; *Klanowski v. G. T. R. Co.* 64 Mich. 279. Plaintiff's progress across the tracks was arrested by Cooney's call and the remarks about the bull in the car and about the train from the west. This was a momentary distraction which excused the failure to discover the approach of the engine in time to avoid the injury. *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247; *Bower v. C., M. & St. P. R. Co.* 61 id. 457, 461; *Winstanley v. C., M. & St. P. R. Co.* 72 id. 375; *Butler v. M. & St. P. R. Co.* 28 id. 487; *Phillips v. M. & N. R. Co.* 77 id. 349; *Winchell v. Abbot,* id. 371; *Ward v. C., St. P., M. & O. R. Co.* 85 id. 601; *Kane v. N. C. R. Co.* 128 U. S. 91; *Kellogg v. N. Y. C. & H. R. R. Co.* 79 N. Y. 72, 77; *Cremer v. Portland,* 36 Wis. 92, 98.

For the respondent there was a brief by *Fish & Cary,* and oral argument by *A. L. Cary.* They argued, among other things, that the act of 1891 was an amendment or revision of sec. 1809, R. S. The two acts are *in pari materia.* The word "villages" having a definite meaning, viz.: "incorporated villages," in sec. 1809, should have the same meaning in the act of 1891, unless some other meaning is definitely expressed. Potter's Dwarris, Statutes, 189, 191; *State ex rel. Bergenthal v. Bergenthal,* 72 Wis. 314; *State ex rel. Rochester v. Racine Co.* 70 id. 543; *Smith v. Smith,* 19 id. 522; *Buckstaff v. Hanville,* 14 id. 77; *State ex rel. Att'y Gen. v. Messmore,* id. 115.

PINNEY, J. 1. The plaintiff's counsel contends that the circuit court erred in not holding that under the provisions of ch. 467, Laws of 1891, the defendant was absolutely liable for all damage caused to the plaintiff on a traveled street of the village of Reedsville by running its locomotive on the occasion in question faster than fifteen miles an hour, without causing the engine bell to be rung before and while crossing such street.

Nolan vs. The Milwaukee, Lake Shore & Western R. Co.

The only act in force prior to said ch. 467, concerning the speed of railway trains, was sec. 1809, R. S., which limited the speed of trains in cities and villages to six miles an hour, and required the engine bell to be rung before and while crossing their streets. By sec. 1819, for a violation of sec. 1809 a penalty was imposed and also a liability "to the person injured for all damages sustained thereby." Beyond all question sec. 1809 had no application to *unincorporated* villages, for by sec. 4972, R. S., it was provided as a rule of construction of the Revised Statutes that "the word 'village' imports only a municipal corporation organized by some special act or under some general law, except when a definition shall be expressly given to the same." Thus stood the law until the enactment of ch. 467, Laws of 1891, which is an act relating to the same general subject-matter as the former law, and is, no doubt, to be construed with it and as an act *in pari materia.* It is apparent from ch. 467 that its purpose was to relieve railroad corporations from the necessity and delay of slowing down all their trains while passing through incorporated cities and villages to six miles an hour, irrespective of their size or population, which, in the case of passenger and through freight trains, must have tended to produce unnecessary delay; but this was on condition that some adequate security should be afforded in the case of an increased rate of speed to fifteen miles an hour, and to that end it was provided that such a corporation "shall not run its trains or locomotives faster than fifteen miles an hour until after having passed all the traveled streets thereof, and shall cause the engine bell to be rung before and while crossing such streets. Provided, however, that gates shall first be placed and maintained upon such street crossings within cities and *incorporated* villages over which trains shall pass, as the public authorities of any such city or village may direct." This act retains, in its second section, the provision making any company violating or failing to com-

ply with its provisions "liable to any person injured for all damages caused thereby," and imposes, in addition, a forfeiture of not less than $50 nor more than $100, to be recovered only by an action in the name of the state.

Ch. 467 plainly appears to be a revision of the entire subject-matter of the previously existing provisions relating to the speed of railway trains and precautions to be observed in passing through cities and incorporated villages. "A village is a small inhabited place; an assemblage of houses in the country, less than a town or city, and inhabited chiefly by farmers and other laboring people." Webst. Dict. tit. VILLAGE. Any small assemblage of houses for dwellings or business or both, in the country, constitutes a village, whether they are situated upon regularly laid-out streets and alleys or not. Anderson, Law Dict.; *Ill. Cent. R. Co. v. Williams*, 27 Ill. 49. In view of the obvious purpose of the act, to allow, within prescribed limitations, an increased rate of speed from six miles to fifteen miles an hour, it cannot be supposed that the legislature intended to extend the provisions of the act to unincorporated villages, which would impose upon railroad corporations an increased burden or necessity of slowing up and ringing the bell at every small assemblage or group of houses in the country, or at every cross-roads. Besides, the title of the act — "An act to limit the rate of speed of railroad trains and locomotives in *incorporated* villages and cities"— may be resorted to, it seems, to ascertain its purpose. *School Directors of Pelican v. School Directors of Rock Falls,* 81 Wis. 428, 434; *Mundt v. S. & F. du L. R. Co.* 31 Wis. 451–462; *State ex rel. Rochester v. Racine Co.* 70 Wis. 543. The word "village," in the original statute, having had a definite meaning including only those which were incorporated, in view of the title to the act in question, which expressly mentions only *incorporated* villages, and the use of the same words, "incorporated villages," in the proviso of sec. 1, together with the evident

Nolan vs. The Milwaukee, Lake Shore & Western R. Co.

purpose of the act and the previous provisions of law relating to the same general subject, make the rule of construction relative to statutes *in pari materia* laid down by the authorities cited by the defendant's .counsel applicable, and make it plain that ch. 467, Laws of 1891, is not applicable to the passage of railroad trains or locomotives through unincorporated villages.

It follows that the absolute rule of liability contended for does not apply, and, as it is not contended but that the defendant was guilty of negligence in the management of its locomotive, the only question to be considered is whether the plaintiff is precluded from maintaining his action by reason of contributory negligence on his part.

2. The evidence of the plaintiff shows clearly that, while the train was at the station platform, loading or unloading, he was giving his attention to matters about which he was engaged, and was interesting himself about tying up the bull that had been loaded in the stock car, and whether it could be accomplished before the train would arrive from the west, into which the stock car was to be taken. His back seems to have been turned toward the locomotive and train at the station, and he was looking in an opposite direction, and mainly toward the stock car; but he did look partially over his shoulder and see the train and locomotive at the station. He knew it was there only for the purpose of loading or unloading freight. Nothing whatever occurred which could fairly or properly divert or take his attention from the fact of the presence of the train, and that it or the locomotive might at any moment move out to the west on the main track, unless it be said that giving his attention entirely to the securing of the bull and looking for the stock train, so that he gave but little attention to his own safety from injury by the train at the station, was a diversion of attention, excusing or. palliating negligence on his part. But this we cannot allow. He had no right to busy himself with

concerns in which he was interested, to the neglect of his personal safety, and to charge the defendant with the consequences, however serious. The exercise of proper care for his personal safety was his paramount duty. Standing with his back to the approaching locomotive, and ignorant of its approach, he turned and stepped into the track without looking for the locomotive or train; and the cowcatcher instantly had him, as he says, by the heels. He testifies that he listened, but this must. be understood, we think, in the sense that one always has his ears open to the reception of sound; but it seems obvious that his attention was not upon the locomotive or train, for, if it was, it seems impossible that in broad daylight, with no obstruction between him and the locomotive, it could have approached so close to him, without his knowledge, that he stepped upon the track, unconscious of its presence, immediately in front of the cowcatcher. He says he did not look; that he had looked shortly before, exchanged some words with Cooney, and turned and stepped into the track. It is evident that he talked longer with Cooney than he remembered. The rule quite rigidly applied is that one who approaches a railway track is bound to both look and listen to guard against danger from a moving train. He is bound to use his eyes and his ears, not only in respect to impending danger from a moving train or locomotive, but he is bound to vigilant observation by looking and listening in respect to a locomotive or train that may be quickly put in motion to his great peril if he neglects this caution. Had he looked, instead of only listening, he would certainly have avoided injury; and this illustrates the necessity of the rule. He was not absolved from the duty to look by reason of the negligent conduct of the defendant.

Several cases quite like the present have been recently decided in this court, to which reference will be appropriate. In *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 194, where the injured party, while upon depot grounds, stepped, without

looking, immediately in front of an approaching train, it was laid down that: "A railroad track is, in effect, a standing proclamation to one approaching it that cars are liable to run thereon at any time; and especially is this so on depot grounds. This court has repeatedly held that a person approaching a railroad track must use his eyes in looking and his ears in listening. The looking and the listening must, as a general rule, be contemporaneous with the act of approaching and crossing." Very many other cases were there cited, illustrating and sustaining the views here expressed. The obligation resting upon the party about to cross the track to exercise ordinary care to escape injury in crossing is just as binding as the obligation resting on the servants of the company to use ordinary care to avoid danger and prevent injury to him. The case of *Lofdahl v. M., St. P. & S. S. M. R. Co.* 88 Wis. 421, is, in the main, quite in point. Here, as there, the party injured was aware of the near presence of a train on the track, on which, in that case, he was standing with his back towards it, engaged in an altercation with the conductor of the train on which he had been riding for putting him off, when the train behind him was moved forward by the fireman, without signals and in a negligent manner, so that it ran upon and injured him. Here the plaintiff, while giving his attention to matters in which he was interested, without looking in the direction of the locomotive, stepped upon and into the track directly in front of it, so that his injury was practically instantaneous. The cases of *Hansen v. C., M. & St. P. R. Co.* 83 Wis. 631; *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659; and *Wilber v. Wis. Central Co.* 86 Wis. 335, may be profitably consulted on the question under consideration.

It is impossible to say that the party in charge of the engine was guilty of wilful, wanton, or criminal negligence. There is no evidence to show that he saw the plaintiff, and, if he did, he had no right to expect that he would step di-

rectly in front of the engine, or that he was about to cross the track.

The case is distinguishable from *Johnson v. L. S. T. & T. Co.* 86 Wis. 64. In that case the injured party, who was walking south on the track, had seen the train pass to the north, and supposed it was going quite a distance up to the smelting works, but the train unexpectedly returned south and ran upon him when he had walked a distance of only about ninety feet. He had listened, but had not looked. He had located the train going north and away from him; and under all the facts of that case it was left to the jury to say whether walking ninety feet without looking again was contributory negligence. Here the locomotive was facing the defendant only 200 feet distant, and liable to start towards him at any moment; and yet, while in a place of safety, he stepped into a place of peril without looking, and immediately in front of the locomotive moving at the rate of from eighteen to twenty-five miles per hour, trusting only to his sense of hearing to warn him of the danger.

Upon the undisputed evidence, we must hold that the plaintiff was guilty of contributory negligence in not looking when he stepped upon the track, and that it is not palliated by the fact that he looked just before, at a time when the locomotive was standing still twelve rods distant.

*By the Court.*— The judgment of the circuit court is affirmed.