Guhl vs. Whitcomb and another.

Guhl, Respondent, vs. Whitcomb and another, Appellants.

*January 12 — February 1, 1901.*

*Railroads: Injury to traveler at highway crossing: Duty to look and listen: "Diversion of attention:" Evidence: Photographs of nude person.*

1. The known presence of a railway track is itself notice of the momentary peril of a passing train at all times, and the duty to look and listen is not relaxed by any opportunity for theorizing or difference of opinion as to whether a train is or is not likely to pass. A remark to the contrary in *Ward v. C., St. P., M. & O. R. Co.* 85 Wis. 601, overruled.

2. "Diversion of attention" will not justify a failure to look and listen at a highway crossing, except in cases where the attention is so irresistibly forced to something else as to deprive the traveler of the opportunity to perform that duty. The duty to look and listen is absolute *where the opportunity exists.*

3. Plaintiff, a girl nineteen years old, riding northward on a bicycle on a highway which crossed a railway track at an angle of only sixteen degrees, dismounted at a point 105 feet from the crossing and about on a line with the right-of-way fence, looked to the south, in which direction her view was unobstructed for at least 800 feet, and then proceeded slowly on foot, without again looking south, until she reached the crossing, where she was struck by a train from that direction. While approaching the track she had noticed a train about 2,000 feet to the northward, which she thought was approaching slowly, but her view of that train was again obstructed until she was within a few feet of the crossing. She could not see the sidetrack upon which such train was in fact standing, and did not know of its existence, although she lived a short distance away. *Held,* that she was negligent in omitting to look for a train from the south.

4. The admission in evidence of photographs showing rear views of the person of the plaintiff, a young lady, nude from below the shoulders to mid-thigh, was grossly improper. If the condition of any private part of the body of any party, male or female, is material on any trial, it should be privately examined by experts out of court, and expert testimony be given of it.

Appeal from a judgment of the circuit court for Winnebago county: George W. Burnell, Circuit Judge. *Reversed.*

Action for personal injuries received by plaintiff about
five miles south of Oshkosh, at a crossing of a north and
south highway with the Wisconsin Central Railroad, which
at that point ran so nearly north and south that the angle
of crossing was only sixteen degrees.   Plaintiff, a girl nine-
teen years of age, resided with her father about a quarter
of a mile south of the crossing, and between the highway
and the track.   On the 28th of March, 1896, she started
from her father's house northward on her bicycle, and rode
to the crossing of an east and west highway about half way
to the railroad crossing, where she dismounted to cross a
mud puddle.   She then looked to the eastward and south-
ward towards the track, of which she could see about a
quarter of a mile south of the crossing.   She mounted her
wheel, and proceeded to a point in the highway 105 feet
south of the crossing, which point was about thirty feet due
west of the track and about on a line with the right-of-way
fences.   Approaching this point, she had noticed a train to
the northward, a long way off, which at this point was ob-
scured by fences and elevation in the ground, though she
could still see the smoke.   At this point she dismounted and
looked southward.   The amount of the track south of the
crossing within her vision is variously estimated at from
800 feet to eighty rods.   She then proceeded on foot, slowly,
looking continuously to the northward, her vision of the
train in that direction being obscured by the cattle-guard
fences until she reached a point a few feet from the track,
when she saw a freight train to the northward, which was
in fact stationary and something more than 2,000 feet away,
but which she thought was moving slowly towards her.
Without looking to the southward, she proceeded slowly to
and onto the track, at which moment she was struck by a
regular passenger train then due, running at a high rate of
speed northward.   At any point within the last fifty feet of
her course before reaching the railroad track her vision

of the track to the southward was unobscured substantially as far as the eye could reach, but at no point subsequent to that 105 feet away had she looked to the southward. She heard the rumble of a train, which she took to be the freight train to the northward of her. There was evidence of failure on the part of defendants' employees to give the requisite signals by whistle or bell.

The court instructed the jury, among other things, that "the duty of a traveler before crossing a railway to look both ways and listen depends upon the conditions that he might reasonably expect the coming of a train at any and all times, and that his attention is not reasonably arrested or diverted;" and that they must determine whether it was "ordinary care and prudence on the part of the plaintiff to fail to look to the south and see this train approaching, when her attention was taken up by watching the train which was coming from the north."

A general verdict was rendered for the plaintiff against defendants' motion to direct one for the defendants, which the court refused to set aside upon motion, and entered judgment for the plaintiff, from which the defendants appeal.

For the appellants there was a brief by *Howard Morris* and *Thos. H. Gill*, and oral argument by *Chas. M. Morris*.

For the respondent there was a brief by *Earl P. Finch* and *Fred. Beglinger*, and oral argument by *Mr. Beglinger*.

DODGE, J. The two principal errors assigned consist in the denial of motion to direct a verdict on the ground of plaintiff's contributory negligence, and in the giving as a rule of law to the jury the sentence quoted in the statement of facts, together with some other instructions further developing the same idea. That sentence is adopted from the opinion in *Ward v. C., St. P., M. & O. R. Co.* 85 Wis. 601, 604, and, unless later decisions of this court have modified

that case, the instruction assailed is not unsupported by authority. A review of the subsequent cases, therefore, becomes necessary.

It will be observed that the instruction under consideration exempts a traveler from the absolute duty to look and listen in the absence of either of two conditions: first, that the situation is such that he may reasonably expect the coming of a train at any and all times; and, second, that his attention is not reasonably arrested or diverted. The first of these exceptions to the rule of duty to look and listen, namely, that the situation must be such that one may reasonably expect a train to pass, was repudiated within a year after the decision of the *Ward Case* in *McKinney v. C. & N. W. R. Co.* 87 Wis. 284, under circumstances more strongly inviting its recognition. In the *Ward Case* the exception was predicated on the fact that a train had just passed and plaintiff failed to look and see a loose car following it. In the *McKinney Case* two trains had passed, and plaintiff failed to look and see a third, following more closely than customary and than permitted by rules of the company. Under those circumstances it was said, " The track itself is a danger signal." In his dissenting opinion Mr. Justice WINSLOW pointed out that the decision in substance overruled the *Ward Case*. Again, in *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 186, 193, was excluded the possibility of legitimate inference that under any circumstances a railway track is safe; the court saying, " A railroad track is, in effect, a standing proclamation to those approaching it that cars are liable to run thereon at any time." In *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 26, the above language was quoted and applied where plaintiff had observed that the train headed west, which injured him, was stationary at the depot, 200 feet away, engaged in loading freight, and his attention was engaged in looking for a train due from the west.

In *McCadden v. Abbot*, 92 Wis. 551, plaintiff, a fireman,

Guhl vs. Whitcomb and another.

observing the engine which injured him, stationary, taking on coal, went a short distance and crossed the track without looking, and was run down because the engine traveled fifteen miles per hour, whereas if it had pursued the custom, known to plaintiff, of traveling only six miles per hour in that part of the yard, he would have been in no peril. In this situation it was reiterated that the track was a standing proclamation of danger, and that failure to look by one having the opportunity was of itself contributory negligence and precluded recovery. There was cited with approval *Nixon v. C., R. I. & P. R. Co.* 84 Iowa, 331, to the effect that knowledge of a custom to run trains in only one direction on the particular track was no excuse for failure to look both ways. In *White v. C. & N. W. R. Co.* 102 Wis. 489, it was held that absence of usual warning by gates was no excuse to a foot passenger for omission to look, when he had the opportunity, before stepping on the track.

From these later decisions we think it should have been apparent to the trial court that the somewhat *obiter* remark in the *Ward Case* that the duty of one to look and listen " depends on the condition that he might reasonably expect the coming of a train at any and all times " is entirely abrogated. In nearly all of the cases above quoted the *Ward Case* was urged upon the attention of the court. It is, perhaps, unfortunate that it was not mentioned by name in some of the opinions and the implied repudiation of some of its doctrine made explicit. However, in view of the cases above mentioned, it cannot be doubted that the rule of this court, now settled too firmly to permit question, is that the known presence of a railway track is itself notice of the momentary peril of a passing train at all times, and the duty to look and listen is not relaxed by any opportunity for theorizing or difference of opinion as to whether a train is or is not likely to pass. Observation, not logic, is the proper precaution.

The instruction of the court — adopted, as we have said, from the *Ward Case* — that, if a traveler's attention is "reasonably arrested or diverted," his duty to look and listen is abrogated, involves a misleading use of terms. "Diversion of attention" had long before been adopted to express conditions under which the watchfulness of one traveling on a sidewalk might be relaxed, consistently with ordinary care. The expression had thus acquired a meaning in the law which obviously renders it inapplicable to the duty of vigilance resting on one about to cross a railway track, which is not, like a city sidewalk, an assurance of probable safety, but, on the contrary, a proclamation of peril. The expression was used (casually, it is true) in *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, but there it was applied to a situation where the plaintiff's attention was irresistibly withdrawn from an approaching train by attempted runaway of his team. The expression having again been used in the *Ward Case*, and both cases being pressed on this court in *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 386, the present chief justice took occasion to point out that in his use of terms in the *Piper Case* he applied the expression to an absolute *forcing* away of the attention. That term was again used to express the situation which might excuse momentary relaxation of watchfulness in *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 469. In numerous other cases circumstances which might well satisfy the expression "diversion of attention" have been held insufficient to excuse a failure to continually look and listen. *Lofdahl v. M., St. P. & S. S. M. R. Co.* 88 Wis. 421; *McKinney v. C. & N. W. R. Co.* 87 Wis. 284; *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 186; *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16; *McCadden v. Abbot*, 92 Wis. 551; *White v. C. & N. W. R. Co.* 102 Wis. 489; *Cawley v. La Crosse City R. Co.* 101 Wis. 145; *Ryan v. La Crosse City R. Co.* 108 Wis. 122; *Wills v. Ashland L., P. & St. R. Co.* 108 Wis. 255.

The rule stated in these decisions is that the duty to look and listen is absolute *where the opportunity exists.* In most of these cases the exception in favor of reasonable diversion of attention was urged, and its applicability was apparent if those words be used in the sense now contended for by respondent. It is considered, therefore, that all exception to the duty to look and listen at a railroad crossing resulting from diversion of attention has been repudiated by this court except in cases where the attention is so irresistibly forced to something else as to deprive the traveler of the opportunity to perform that duty. This rule is general, and applies as well to the driver of a team as to the foot passenger, with the difference, however, that it is much more difficult to conceive circumstances surrounding the latter which can at once deprive him of the opportunity to observe and the ability to stop short of the actual peril. With him a single step, wholly under his control, crosses the danger line. With the driver, many things may complicate the situation,— momentum, conduct of horses, multiplication of perils, and the like.

In the record before us there is nothing to excuse the conceded omission, while walking a distance of at least fifty feet, to look along the unobscured track to the southward. During most of that distance observation to the north was futile and needless. Plaintiff could not see the train in that direction, and she was in no peril from it till she reached the track. When she did come to a point whence the freight train was in sight, she was still ten or fifteen feet from the track, and the train, moving, as she thought, very slowly, was more than a third of a mile away. It certainly offered no attraction and threatened no peril to preclude her from a glance in the opposite direction. Even had it been so close as to imperil her, nothing prevented her from pausing to give that glance before incurring the other danger, which the existence of the track warned her was imminent and

momentary.   The suggestion that the sight of the freight train was an assurance against a train from the south is not of weight.   If, as she testifies, she could not see, and did not know of, a sidetrack, she had no right in reason to infer the nonexistence of any.   Indeed, the fact that the freight train was substantially stationary at a place remote from the station would suggest a passing point, if she reasoned at all on the subject.   These considerations are, however, beside the issue.   No process of reasoning could justify her in needlessly stepping onto the track without assuring herself by observation that no train approached from either direction.

We cannot, without violation of settled rules of law, either approve the instruction given to the jury, or recognize any of the circumstances surrounding plaintiff as sufficient to justify the inference or conclusion that she was not negligent in omitting to look for a train from the south, for which precaution she had ample opportunity.   Both of the assignments of error are well taken.

2. We cannot pass silently the reception in evidence of photographs showing rear views of plaintiff's person, nude from below the shoulders to mid-thigh.   Such photographic exposure of the body of a twenty-year-old girl in a court room full of men is even more grossly improper and shocking than the conduct disclosed in *Brown v. Swineford*, 44 Wis. 282, 285, of which this court expressed its condemnation in the scathing words of Chief Justice RYAN: "No such indecency is ever necessary, or should be tolerated, in court.   If the condition of any private part of the body of any party, male or female, is material on any trial, it should be privately examined by experts out of court, and expert testimony be given of it.   Such an exposure as was made in this case, if made without leave of the court, might well be punished as a contempt; made with the sanction of the court, it is none the less improper and indecent, well calculated to disgrace the administration of justice, and to bring

it into ridicule, if not into contempt. It is hoped that this court may never have another occasion for such censure." To those words we cannot and need not add, save to reiterate the sentiments they express, and to invoke for them the careful attention of those, whether of court or bar, who may be tempted to repeat such defilement of the proceedings in a court of justice.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.