WHITE, Administrator, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*October 4—October 24, 1911.*

(1-3) *Conflict of laws: Cause of action:* Lex loci: *Foreign laws: Pleading and proof: Presumptions.* (4-10) *Railroads: Injury to person at highway crossing: Contributory negligence: Failure to look and listen.* (11-13) *Trial: Taking questions from jury: Review on appeal.*

1. A right to be vindicated by an action in court is dependable on the law of the country where the cause of action is claimed to have arisen.
2. For establishment of a cause of action dependable upon the law of a foreign country such law should be pleaded and proved the same as any other essential fact.
3. Where a violated right involving a cause of action is dependable on the law of a foreign country, and that law is not brought

to the attention of the court by pleadings and evidence, the same is conclusively presumed to be like the law of the forum.

4. Presence of a railroad track is such a significant warning of probable danger, that ordinary care requires a person before attempting to cross, to first use his senses of sight and hearing, to the right and to the left, for discovery of any train which may be in dangerous proximity.

5. Failure to perform the duty to look and listen, in the circumstances stated in the foregoing, when there is opportunity therefor, is fatal want of ordinary care.

6. The duty to look and listen, in the circumstances indicated, includes duty to see or hear an approaching train, if one is in plain sight or hearing. Hence the declaration of a person as to his having performed such duty yet did not see or hear a train, though one was in plain sight or hearing from his position, does not present a jury question, and most emphatically so as to pedestrians.

7. The rule stated as to looking, listening, seeing, and hearing, is one of law, not of mere evidence.

8. Failure to comply with the aforesaid rule is not excused by mere diversion of attention or absorption in thought, or anything short of practical incapacity to give attention by looking and listening, by reason of some actual prevention,—physical or its equivalent.

9. The rule stated is not open to exception to fit the varying notions of different persons as to when a train is in dangerous proximity to the crossing.

10. A companion rule to the foregoing is this: where one was so circumstanced as regards crossing a railroad track that it was incumbent upon him to use his senses to discover whether there is an approaching train in dangerous proximity, he is conclusively presumed to have been able to see or hear one if others no more favorably situated therefor did so without difficulty.

11. In case of evidence being so conclusively one way as not to support a verdict the other, the cause should be taken from the jury on motion therefor.

12. A refusal to direct a verdict involves judicial determination that there is such conflicting evidence and reasonable inferences therefrom that a verdict either way would not be wholly without proof to sustain it.

13. In case of such a judicial determination as indicated in the last foregoing, or a like determination on motion after verdict, it should not be disturbed on appeal, unless, giving due weight to the superior advantage possessed by a trial judge to reach a just result, it yet appears by the record to be clearly wrong.
[Syllabus by Marshall, J.]

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

Action for damages claimed to have been caused to the wife of plaintiff's intestate by the alleged negligent killing of her husband while crossing defendant's track.

April 22, 1909, the deceased, William G. Barnstable, a married man fifty years of age, at Lake Villa, state of Illinois, in company with his wife, about 7:30 p. m. started to cross defendant's railway track at the intersection with a village street known as Cedar avenue. They had come from home, some little distance northeast of the crossing, and were on their way to the postoffice, traveling southwesterly on the sidewalk which was on the southeasterly side of the street. In their course there were three railway tracks. The first, a passing track, was about eighty-five feet at right angles southwesterly from the northeasterly boundary line of the right of way. At such line, in the center of the street, and about 116 feet on a line to the point where the sidewalk on which Barnstable and his wife were walking reached the passing track, there was suspended, about fifteen feet above the surface of the street, a gasoline arc light of a rated one thousand candle power. There were no obstructions interfering with the illumination from this light reaching the passing track at such crossing, a considerable distance up and down and across the track, and across the second or main track, located about fourteen feet further southwesterly. Along the southwesterly side of the latter and southeasterly of the southerly sidewalk was a station platform and depot. The platform reached to within about fifteen feet of the sidewalk and the depot to within about 135 feet. The third track was some fifty feet southwesterly of the main track and within ten feet of the southwesterly side of the depot. On the north end of the station platform, within eight or ten feet of the sidewalk and some fifty feet from the point where the sidewalk intersected the passing track, there was a lamp similar to the one before mentioned. Both lamps were in service at the time of the

accident.   There was a freight train on the main track going
south, which intercepted, to some extent, light from the lamp
on the depot platform reaching the sidewalk crossing of the
passing track.   Aside from such interference there was noth-
ing to prevent the two lights from illuminating such crossing
and the surrounding territory, reaching out from it in all di-
rections for a considerable distance.

As Mr. Barnstable and his wife reached the right of way, a
Mr. Rogers was in the act of lighting the lamp located there.
The two conversed for a moment while Mrs. Barnstable
walked on.   It was cloudy and pretty dark, but the lights
rendered all objects on the northerly side of the main track
for a considerable distance up and down the same discernible.
Mr. Barnstable was perfectly familiar with the operation of
trains on the track and all the surroundings.   He was delayed
at crossing by the freight train.   During the delay, after
talking as stated with Mr. Rogers, he walked to and fro on
the sidewalk northeasterly of the passing track while his wife
was seated on a cedar post near the walk, a short distance
from such track.   At this time Mr. Rogers was seated in his
conveyance near by, waiting for the train to pass.   It was
about twenty minutes to 8 p. m.   A Mr. Wunder during this
waiting period drove up with a bus and stopped with the others
for the freight train to clear the crossing.   Both Wunder and
Rogers were a little further from the crossing of the sidewalk
over the passing track than Barnstable and his wife.   While
all were as indicated, Mr. Barnstable moved southwesterly
till he entered or nearly entered upon the passing track and
then stopped again, waiting for the freight train to clear.
He stood looking at it with his line of sight to the right and
his back rather towards the left-hand side of the walk.   The
moving train was making so much noise as to drown that of
cars moving from the left on the passing track toward where
Mr. Barnstable was standing.   A train from the right came
in just ahead of the one which was obstructing the crossing

of the main track. Part of the former had been left on the passing track to the right while the engine, four box cars, and two gondola cars, loaded with sand, passed by the station to the left. One of the gondola cars was set out and the engine and other cars were then backed toward the crossing at a speed of about five miles per hour. The gondola car was farthest from the engine and the first to reach the crossing. There was no light on it or any trainman thereon nor any signaling. Just before the gondola car reached the sidewalk Mr. Barnstable started to make the crossing of the passing track, as he observed the freight train was about to clear it. At that instant he was twenty to twenty-five feet nearer the gondola car than Mr. Rogers or Mr. Wunder. They both saw the car in ample time for Barnstable to have avoided it had he also seen it and made an effort to do so. Rogers saw the car when it was about twelve feet from the crossing. Mr. Barnstable was then in motion. Rogers, seeing his danger, called to him. He turned his head to the left and in an instant, as he was about over or on the southerly side of the westerly rail, was struck and killed. Rogers testified that Barnstable looked both ways before he started to cross; that when he was on the passing track he could have seen the car at the time he—Rogers—did had he looked. Wunder saw the car coming when it was some fifty feet from the crossing. From his viewpoint Barnstable stood looking rather to the right at the train passing on the main track, than in the direction of the approaching car. Parties waiting to make the crossing expected the train on the passing track would have to be made up and moved out.

The testimony on the part of defendant indicated that any one, circumstanced as Barnstable was, could have seen the cars backing up toward the crossing while they were some considerable distance away by looking in that direction for the purpose of observing whether such danger existed; that there were no obstructions interfering with the light from the lamp

north on the easterly side of the right of way rendering cars on the track left of the sidewalk visible for a hundred or more feet away.

The issue made by the pleadings as to whether plaintiff's intestate was negligently run down by defendant's train and killed without contributory negligence on his part, and all other issues essential to a cause of action under the laws of the state of Illinois, were submitted to the jury and found in plaintiff's favor. Judgment was rendered accordingly.

There was a motion on behalf of defendant for a directed verdict; a motion, after verdict, to modify it, among other things, by finding that deceased was guilty of want of ordinary care proximately contributing to his death; for judgment on the verdict as so modified; and a motion to set aside the verdict as contrary to the evidence and for a new trial. Exceptions were duly saved to adverse rulings on such motions.

For the appellant there was a brief by *W. A. Hayes* and *Ryan, Merton, Newbury & Jacobson,* attorneys, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

For the respondent there was a brief by *Gill, Barry & Mahoney,* and oral argument by *T. H. Gill.*

MARSHALL, J. The claimed cause of action arose in the state of Illinois and so is governed by Illinois law. However, in the state of the record such law—the same not having been formally brought to the attention of the trial court by pleading and evidence—must be presumed to be like that of this state. *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707; *Edleman v. Edleman,* 125 Wis. 270, 104 N. W. 56. But, we may say in passing, if the Illinois law for the case did not rest in presumption, it would be found quite as strict as that here as regards the *quantum* of care required of a person in attempting to travel across a railway track at a highway crossing, to come up to the standard denominated

ordinary care, and render efficient in respect to liability, in circumstances similar to those here, for failure of the railway company to exercise ordinary care not to injure such person.

There are a few principles which—though they may well be considered so elementary as not to require even to be stated, much less to be dignified by reference to adjudications showing they were firmly entrenched in our jurisprudence at the time of the accident in question—we will refer to with particularity on account of the seriousness of the case.

It is well, in administering the law, to restate, from time to time, old but living, vital principles however familiar they may be. That tends to prevent deviation therefrom, now and then, as one comes to face situations of great hardship to one party or the other, because of their irremediable character without warping some settled rule supposed to be essential to successful attack or defense. It tends to preserve the law as a science instead of allowing it to fall into confusion and drift to the level of mere arbitration.

Presence of a railroad track is such an admonishment of probable danger that it is inconsistent with ordinary care for a person—traveling on an intersecting highway across such track—to attempt to cross the track without first using his senses of hearing and seeing, to the right and to the left,— mindful of the probability that a train or car may dangerously invade the crossing at any time, so as to discover any such danger, before passing into or remaining within the zone thereof. *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 58 N. W. 393; *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 186, 62 N. W. 1045; *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 64 N. W. 319.

The duty to look and listen for an approaching train before attempting to cross a railroad track is absolute. Failure to do so when there is opportunity therefor and to keep out of the path of an approaching train or car, which would come under one's observation by vigilant performance of such duty, is

want of ordinary care as a matter of law.    *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *Steber v. C. & N. W. R. Co.* 115 Wis. 200, 91 N. W. 654; *Railroad Co. v. Houston,* 95 U. S. 697.

This absolute duty of a person to look and listen before attempting to cross a railway track, extends to vigilant attention in all directions from which a train, locomotive, or car may come, and includes obligation to see and hear such, if there be any, which such attention, in view of the danger, will enable him to.    Therefore, for a person to declare he performed such duty and yet failed to perceive an approaching train or car, in case of there being such in plain sight or hearing, does not raise a question of fact for decision by a jury.    Such person must be presumed to either not have performed such duty or to have done so and yet heedlessly submitted himself to the danger, and that is particularly so as regards a person traveling on foot, "since the danger zone in such a case is so narrow and it may be avoided with so little effort."    *White v. C. & N. W. R. Co., supra; Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837.

This rule of look and listen, in the circumstances stated, and to observe the dangers which are in plain sight or hearing to one in the vigilant performance of it, is, as before indicated, a rule of law, not a mere rule of evidence.    *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295; *Marshall v. G. B. & W. R. Co.* 125 Wis. 96, 103 N. W. 249.

An important companion rule to the foregoing is this: The danger to a person is so great in attempting to cross a railroad track without performing the duty of endeavoring to discover any approaching car or train which is in plain sight or hear-

ing, by the vigilant use of his senses, and at the last opportunity for doing so before entering the zone of probable peril, that no mere diversion of attention or absorption in thought about other matters will excuse nonperformance of it. *Chicago & N. W. R. Co. v. Weeks,* 99 Ill. App. 518; *Guhl v. Whitcomb, supra; Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 116 N. W. 20; *Smith v. C., M. & St. P. R. Co.* 137 Wis. 97, 118 N. W. 638; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102.

Where there is opportunity to perform this duty to look and listen, no diversion of attention short of prevention of some sort will excuse nonperformance. Not, necessarily, physical prevention by the attention being actually physically forced away, though that term has been used, but something akin to it, the term "irresistibly" being used and applied where a person was prevented from looking by reason of violent efforts to manage a team which had escaped, or was escaping from his control. In this respect *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165, has been explained and modified. *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 386, 75 N. W. 169; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 469, 82 N. W. 295; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102; *Marshall v. G. B. & W. R. Co.* 125 Wis. 96, 103 N. W. 249; *Sarles v. C., M. & St. P. R. Co.* 138 Wis. 498, 120 N. W. 232.

The rule discussed does not admit of any exception, especially as regards tracks in a railroad yard, to fit the variant notions of travelers as to whether a car or train is in dangerous proximity, since the track is to be regarded as notice that one is liable to pass in either direction at any time. So before stepping upon the track one must look and listen for a coming train, if there is opportunity to do so, and proceed when informed by his senses that there is none dangerously near. *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142.

The court refused to follow *Ward v. C., St. P., M. & O. R.*

*Co.* 85 Wis. 601, 55 N. W. 771, very soon after it was written, holding that a railroad track is such a striking admonition of danger,—a proclamation of probable momentary peril,—that one must properly perform the acts of looking and listening, or bear the consequences of his want of care in the matter, or of such want of care and like fault of the railway company concurring. *McKinney v. C. & N. W. R. Co.* 87 Wis. 282, 284, 58 N. W. 386. In fact, the rule discussed excludes the idea that one can step upon a railway track, under any legitimate inference that it is safe to do so, without first performing the duty to look and listen and see and hear those things which one so circumstanced might well see and hear by vigilant effort to that end. *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 186, 193, 62 N. W. 1045; *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 26, 64 N. W. 319. Even such a persuasive circumstance as gates being raised where such exist and are customarily let down to bar the way to the track when a train is about to pass, has been held not to excuse a traveler on foot from using, efficiently, his own faculties to discern whether the track is clear before entering upon it. *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *Walters v. C., M. & St. P. R. Co.* 104 Wis. 251, 80 N. W. 451. Emphasizing this, the Illinois court remarked that, not only must the duty to look and listen before entering upon a railroad track be performed but it must be performed attentively with intention to discover imminence of danger if it exists, and that it must be presumed one so circumstanced could have seen or heard, had he looked or listened, that which was in plain sight or hearing, and which others no better situated in respect to the matter, saw or heard. *Wabash R. Co. v. Smillie,* 97 Ill. App. 7.

The stated principles have become so firmly established in the unwritten law,—as will be observed by the many illustrative cases cited, to which many more might be added,—that they are not open to question except so far as varied by stat-

ute.   Hence we may well rest them for the case without elaboration, discussion, or quotations from precedents.   The principles are not matters of mere remedy or procedure and so open to change retroactively.   They appertain to the right itself.   They must be satisfied, in a situation as here, in favor of the plaintiff or there is no established cause of action.   So the law existing at the time of the happening of an injury, determines the right.   That cannot be added to or taken from by legislation.   *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 400, 119 N. W. 102; *Keeley v. G. N. R. Co.* 139 Wis. 448, 454, 121 N. W. 167; *Quinn v. C., M. & St. P. R. Co.* 141 Wis. 497, 498, 124 N. W. 653.

The alleged cause of action here, we must observe, in connection with what has been said, happened prior to the passage of ch. 332, Laws of 1909, and ch. 653, Laws of 1911, changing somewhat the essentials of the right, in certain circumstances, appertaining to injuries to travelers on highway crossings of railway tracks.   As regards any accident since the enactment of the statutes and within their purview, the rules stated here must yield to the written law.

Now, it would seem that a mere reading of the statement of facts in this case, in connection with the legal principles mentioned, can lead to but one conclusion.   The *locus in quo* was in a railroad yard and the particular track was designed for yard use.   So the rule applies with superlative significance that the deceased should have apprehended that a train might approach the crossing from either direction at any time, regardless of anything which had occurred, indicated by the evidence.   The previous occurrences should rather have put him on the alert than otherwise.

If the deceased was diverted from paying attention in the direction from which the car was approaching, by his being intent upon observing when the south-bound train cleared the crossing so he could proceed, and that was what caused his failure to observe the danger, or his being absorbed in the

thought of reaching the postoffice before closing time, caused the difficulty, neither excuses him for failure to discover the danger, if it was in plain sight, as we have seen.    If he failed to look to the south before entering upon the track, then he was fatally at fault.    As it is understood here, counsel for respondent make no claim contrary to these observations.    They predicate their case on the theory that the deceased did look in the direction of the coming car before stepping upon the track, but did not see it and could not do so because of darkness; and that he could not hear the car because of noise made by the passing train.

That he could not hear the approaching car may be readily conceded.    Certainly the jury were warranted in so finding. But were they warranted in finding that deceased seasonably performed the duty to look, and was unable to see the car because of darkness?

The proximity of the thousand candle power light which was only a little over one hundred feet away and entire absence of interferences and the whole physical situation, show with mathematical certainty that there was ample opportunity for deceased to seasonably have seen the car before he entered upon the track.    So the rule applies that he was bound to see it, and avoid it or not at his peril.    That is reinforced by the undisputed fact that several witnesses, including his wife, saw the approaching car, rendering applicable the rule stated, that the particular person must be conclusively presumed to have seen the car if he looked in the direction thereof, since it was plainly visible to others no more favorably situated therefor than he was.    Under the circumstances, had he survived and testified on the trial that he looked southerly on the track before stepping upon it and could not see the car approaching, his evidence would not have been entitled to credence.

So, when we examine the case from all viewpoints, we are constrained to conclude that it has not a peg, so to speak, to

stand on as to the question of whether, at the close of the evidence, it presented a jury question. · The court, it seems, should have taken the case from the jury on the motion made in defendant's behalf for a directed verdict. The failure to do that, in effect, judicially informed the jury that there was room in the evidence for conflicting reasonable inferences on the question of contributory negligence. It is not strange, under such circumstances, that they resolved the doubt in favor of plaintiff. There is the danger of practically putting upon the jury the burden of deciding the judicial question,—to deal with a case ´as involving controverted matters of fact, vital to the ultimate result, when the evidence plainly will not support a finding other than one way. The error here was primarily an error of law attributable to the court. The jury may well be excused for deciding that the weight of probabilities is one way when it seems to the judicial mind to be the other way, where there is room for weighing probabilities against probabilities, or even where there is not, if the attitude of the court is to the contrary. True, whether there is such room or not, is often a very serious question, and in such a situation it is quite proper, in the trial jurisdiction, to lean toward resolving the doubt in the affirmative. In recognition of that and the better facilities the trial court has for solving such a question, the rule has become firmly established that its disposition of such a matter will not be disturbed here unless, upon the record, after giving due heed to the more favorable opportunity below for reaching a right result, it appears to be clearly wrong,—manifestly wrong as has sometimes been said to indicate, emphatically, the dignity to be given to a trial court's decision. It is considered that such rule is well satisfied in this case in favor of the appellant.

It follows from what has been said that the trial court erred in not taking the case from the jury and in failing to cure that mistake by changing answers in the special verdict, in response to appellant's motion, so as to find the deceased to

have been guilty of fatal contributory negligence.   That element precluded a recovery notwithstanding the finding on ample evidence that the appellant was negligent in backing the car upon the crossing as it did.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment in favor of the defendant.

SIEBECKER and KERWIN, JJ., dissent.