KANASS, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*February 6—March 6, 1923.*

*Railroads: Accidents at farm crossings: Damage to property: Absence of signals by approaching train: Degree of care required of traveler: Look-and-listen rule: Exceptions: Person driving tractor.*

1. Sub. 6, sec. 1809, Stats., which provides that a recovery for personal injuries or death caused by the negligent omission of a railway company to comply with the requirements of that section shall not be barred by a slight want of ordinary care, does not apply in an action to recover for damage to personal property.

2. Plaintiff, operating a tractor hauling a trailer loaded with gravel, on approaching a railroad farm crossing on an up grade stopped sixty feet from the track and looked and listened. He then started to cross the track at a gradually slackening speed and was struck on the crossing by defendant's train. *Held,* that the necessity of devoting his whole attention to the operation of the tractor was not such an irresistible diversion of attention as would absolve him from the duty of again looking and listening before crossing the track.

3. In determining whether the trial judge properly held there was contributory negligence as a matter of law, this court will allow his decision to stand unless clearly convinced that it is wrong.

APPEAL from a judgment of the circuit court for Dodge county: C. M. DAVISON, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Geo. C. Wheeler* of Mayville and *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *Mr. Arthur W. Lueck* and *Mr. Wheeler.*

*H. J. Killilea* of Milwaukee, for the respondent.

JONES, J. Plaintiff's tractor was struck by a freight train at a private crossing on the farm of plaintiff. At the time of the collision plaintiff was driving the tractor, to

which was attached a trailer loaded with gravel from a pit on the farm. It appeared that for several years gravel had been hauled from this pit across the tracks by plaintiff and those in his employ, and that defendant ran four passenger and several freight trains daily upon the line.

The tracks extended in a northerly and southerly direction and the road used by plaintiff crossed the tracks approximately at right angles. Beginning at a point about forty feet west of the west rail the road inclined gradually towards the tracks, making a rise of four feet and four inches at the location of the crossing. A culvert was situated 250 feet north of the crossing. Bordering the right of way at this point was a small grove of trees. The distance between the west rail and the right-of-way fence was a little more than twenty-five feet.

Plaintiff testified that he had used the crossing for several years; that customarily a bell or whistle was sounded when a train approached; that because of the steep grade it was necessary for him to cross the track in second speed; and that the poor condition of the road and the difficulty of taking a heavy load up the grade made it necessary for him to devote all his attention to managing the tractor. He testified further that on the day of the accident he stopped the tractor at a point sixty feet west of the crossing and looked in both directions for a train and listened for a warning; that he saw no trains and heard no sound of any; that he then shifted into second gear and approached the crossing at a speed of from eight to ten miles an hour; that as he neared the rails the speed gradually slackened, and that when he reached the tracks the tractor was barely moving; that when he was crossing the tracks he saw the engine approaching from the north only a few feet away and had only time to jump before the collision. In his testimony the plaintiff said:

"At the time I stopped, I looked and then I went ahead, and kept on going; I looked at my tractor all the time; it

occupied all my attention. I never looked to the right or to the left."

It was the undisputed testimony that for a distance of 2,100 feet the track to the north of the crossing was straight; that one standing at a point 100 feet west of the crossing could see a man standing on the track 695 feet north of the crossing; that fifty feet from the track one might see a man 863 feet away; that forty feet from the crossing a man could be seen 964 feet up the track; and that at a point thirty feet from the crossing there was an unobstructed view to the north for more than 1,000 feet.

In a special verdict the jury found that the bell was not rung at a reasonable distance before the train reached the crossing; that the speed of the train was thirty miles an hour; that as a result of the noise caused by the natural operation of the train it could be heard for a distance of a mile; that reasonable regard for the safety of persons rightfully using the crossing required that warning of an approaching train be given; that the employees of defendant failed to give timely warning; that such failure to give warning was the proximate cause of the collision; and that $900 was the proper compensation to be allowed plaintiff.

The seventh question of the special verdict was as follows:

"Did any want of ordinary care on the part of the plaintiff at and just previous to the time of the accident contribute proximately to produce his damages? *A*. No."

Upon motion of the defendant the answer to question 7 was changed to "Yes" and judgment entered dismissing the complaint.

Although other questions were discussed in the briefs, our decision turns upon the question of whether the trial court was justified in changing the answer of the jury to question number 7; in other words, whether, as a matter of law, the plaintiff was guilty of contributory negligence.

Plaintiff's counsel concede the general rule that:

"The duty to look and listen is absolute where the opportunity exists; that duty is not excused by mere diversion of attention, as it may be in highway cases, but there must be circumstances for which the traveler is not responsible which so irresistibly force his attention to something else as to deprive him of his opportunity to perform the duty." *Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 310, 116 N. W. 20; *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142.

Counsel claim, however, that the facts proven bring the case within an exception to the rule. They claim that the existence of the grade, the fact that the plaintiff exercised judgment in selecting the most favorable point to make the last stop, that he could not get the tractor over the grade if he started from this point on low speed, that if he had stopped to shift gears and look and listen for the train within a shorter distance than sixty feet from the track he could not have made the crossing, that the roadway was narrow and somewhat rough, that if he had proceeded at a higher rate of speed there was danger of accident on the other side of the crossing, that he was driving a loaded tractor and not a team of horses, that if he had looked for the train he would have had to lessen his power and slacken his speed and would not have made the crossing, and that he could not have made the crossing on low, were facts which brought the case within the doctrine of irresistible diversion of attention.

It is argued that he was required to give his undivided attention to the business before him, and that from the time he started, sixty feet from the track, he was not bound to look or listen. Counsel largely rely upon the following cases: *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165; *Sarles v. C., M. & St. P. R. Co.* 138 Wis. 498, 120 N. W. 232; *Swalm v. N. P. R. Co.* 143 Wis. 442, 128 N. W. 62; *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570.

In the *Piper Case* the attention of the plaintiff was di-

verted by the conduct of his horses when approaching the track. The language used in this opinion has been explained and modified in several later opinions. *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148.

In the *Sarles Case* the horses of the driver were so frightened by the train that they were beyond his control and he was unable to stop them or prevent them continuing in their course and colliding with the train.

In the *Swalm Case* the highway crossed a series of eleven tracks of the company. On two of the tracks there were strings of cars, and after the plaintiff had passed over nine of the tracks and was in the act of crossing track number 10 a locomotive backing on that track collided with the horses and sleigh. The evidence was that the engine could not have been seen by the plaintiff at a distance of over sixty or seventy feet.

In the *Gordon Case* the view was considerably obstructed by trees, although for the last thirty-five feet approaching the track the view was clear. The driver of the car was killed, and under sub. 6, sec. 1809, Stats., which provides that a recovery for personal injuries or death caused by the negligent omission of a railway company to comply with the requirements of that section shall not be barred by a slight want of ordinary care contributing to the injury or death, this court held that the facts presented a question for the jury. But Mr. Justice Eschweiler said in the opinion:

"Unquestionably under the evidence before us in this case the deceased did not exercise the ordinary care that the rules of law and the dictates of prudence alike require of a traveler who, knowing of the presence of a railroad track and its rapidly rushing trains, goes upon such track to his injury." *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 246, 247, 169 N. W. 570.

In the case now before us there was no personal injury but only an injury to property. The statute involved in the

*Gordon Case* had no application, and under the long estab-
lished rule a slight want of ordinary care is enough to pre-
vent a recovery.

Another case cited by plaintiff's counsel is *Shaver v.
Davis,* 175 Wis. 592, 185 N. W. 227. In that case plaint-
iff's evidence was that he had never crossed the spur track
in question until the day of the accident, although he had
crossed the main track 1,780 feet further south on other
occasions. The testimony was that there had been a snow
fall and that at the time of the accident the track was all
covered with snow and that in places off the track there
were drifts three or four feet deep and the snow was blow-
ing and drifting, and that plaintiff had much trouble in
managing his truck.

We think that all these cases are plainly distinguishable
from the one before us. They are cases in which circum-
stances beyond the control of the traveler so diverted his
attention that he was prevented from using the care which
ordinarily prudent persons would use under similar cir-
cumstances, and which the law requires.

The mere fact that one is managing a loaded vehicle and
is in a hurry, and ascending a grade, and desires to make
the crossing in a particular manner, and that he gives his
whole attention to managing his vehicle, does not absolve
him from the duty of looking and listening for an approach-
ing train when he is knowingly attempting to cross a rail-
road track. To hold that any of these circumstances, or all
of them combined, excuse inattention to an approaching
train would introduce a new exception to the well settled
rule.

Although the look-and-listen rule is not absolute and un-
bending, we are convinced that this case comes within none
of the exceptions recognized in the cases relied on by plaint-
iff's counsel, and that there was no irresistible diversion of
attention. On the contrary, the case is ruled by numerous
decisions of this court the facts of which it is not neces-

Kanass v. Chicago, M. & St. P. R. Co. 180 Wis. 49.

sary to discuss. *Guhl v. Whitcomb*, 109 Wis. 69, 85 N. W. 142; *Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 116 N. W. 20; *Smith v. C., M. & St. P. R. Co.* 137 Wis. 97, 118 N. W. 638; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *Twist v. M., St. P. & S..S. M. R. Co.* 178 Wis. 513, 190 N. W. 449.

Although it is argued by plaintiff's counsel that there were other dangers than an approaching train which required plaintiff to give exclusive attention to the management of his tractor, we find no evidence on which the argument can be based. The plaintiff was perfectly familiar with the entire situation. The tractor was in good condition and plaintiff was skilled in its management. There is no testimony to the effect that he could not have stopped it at any time, and in time to avoid the train which was plainly visible for a considerable distance before he reached the track. The danger of collision with a passing train was not imaginary or fanciful but a danger obvious and real of which the railroad track was a constant warning.

In determining whether the trial judge properly held that there was contributory negligence as a matter of law, we should follow the salutary rule that his decision should stand unless we are clearly convinced that it was wrong. *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Jeffers v. G. B. & W. R. Co.* 148 Wis. 315, 134 N. W. 900; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102; *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204.

We are satisfied that there was no error in the ruling in this case.

*By the Court.*—Judgment affirmed.